# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTI
### EASTERN DIVI

12CV9792
Judge Robert W. Gettleman
Mag. Judge Young B. Kim

THE BANK NEW YORK MELLON F/K/A )  CIVII
THE BANK OF NEW YORK, AS TRUSTEE )
FOR THE CERTIFICATE HOLDERS OF )
CWABS INC., ASSET-BACKED )
CERTIFICATES, SERIES 2007-7 )

      Plaintiff(s)

      vs.

Milton Holmes Non Record Claimants
Unknown Owners and Unknown Tenants

      Defendant(s)

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Notice of Removal
28USC 1332 and 1441

HEARING:
Date: _____
Time: _____
Judge: _____

**FILED**

DEC X 7 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## NOTICE OF REMOVAL

TO THE CLERK OF THE COURT IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION:

PLEASE TAKE NOTICE that pursuant to 28 USC1331, 1332, 1441, 1442 and 1446 Defendant,

Milton Holmes (Hereinafter Holmes) hereby removes to this Court the state court action

described below.

1.  On November 14th, 2012, an action was commenced in the CIRCUIT COURT OF

    COOK COUNTY, ILLINOIS COUNTY DEPARTMENT-CHANCERY DIVISION,

    entitled **THE BANK NEW YORK MELLON and THE BANK NEW YORK**,

    Plaintiff, vs. Milton Holmes, Defendants, Case number 12CH40671.

2.  Holmes was served according service of process by State law and case law with a

summons in this case 12CH40671.

3. On November 14th, 2012 Holmes received a copy of Plaintiff's initial pleading setting forth the claim for relief upon which such action or proceeding is based.

4. The time within which the removing defendants must file this Notice of Removal has not yet expired. Therefore this is a timely filed Notice of Removal **See U.S.C. 1446(b)**

5. Pursuant to U.S.C. 1446(a), copies of all process, pleadings and orders filed in the state court action are attached hereto as Exhibit "A".

6. This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331 and 1332, and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because (*allege facts supporting allegation of amount in controversy*).

7. Defendant is informed and believes that Plaintiff, THE BANK NEW YORK MELLON AND THE BANK NEW YORK, was, and still is, a citizen of the State of Delaware and is a corporation. Defendant Holmes was, at the time of the filing of this action, and still are Citizens of the State of Illinois as one of the People of these united States of America, being a creation of God and **born/domiciled** in one of the several States attached hereto as Exhibit "B"

8. Federal question: If the original complaint was an attempt in bad faith to evade federal jurisdiction should jurisdiction of this Court be based on diversity of citizenship, 28 U.S.C. 1332?

9. There is complete diversity and the matters in controversy, exclusive of interest and costs, exceed the sum of $75,000 see Deutsche Bank Trust Company vs Howard J

Bodzianowski, et al 11-CV-01950 (2011)

10. Federal question: Should National Banks be allowed to loan money for a longer period of time than five years when the Statute at large (National Bank Act) only allows for loans of no more than five years attached hereto as Exhibit "C"?

11. The United States Code effectively allows for loan terms to extend beyond the National Bank Act's limitations of five years. However, Supreme Court Case law and Case Law within all Districts is well settled that "Whenever there is a discrepancy between the Statutes At Large and the Code...... the Statute At Large ALWAYS reign supreme.

12. Federal question: Violation of the Fair Credit Reporting Act they are not the proper party to bring forth the action?

WHEREFORE, Defendant Milton Holmes prays that this action be removed to the United States District Court for the Northern District of Illinois-Eastern Division.

DATED: December 7th, 2012

Milton Holmes ,
Defendant

Milton Holmes
9236b Halsted St
Chicago, IL 60620
Telephone: (773) 406-5249
Email: holmescanine@gmail.com

# IN THE CIRCUIT COURT OF COOK COUNTY, ILLLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

THE BANK NEW YORK MELLON F/K/A ) CIVIL NO.   12CH40671
THE BANK OF NEW YORK, AS TRUSTEE )
FOR THE CERTIFICATE HOLDERS OF )
CWABS INC., ASSET-BACKED )
CERTIFICATES, SERIES 2007-7 )   Notice of Removal
)
          Plaintiff(s) )
)
    vs. )
)
Milton Holmes Non Record Claimants )
Unknown Owners and Unknown Tenants )
)
       Defendant(s) )
)
)
)

# Notice of Removal to the United States District Court

    Comes now the Defendants, Milton Holmes (Hereinafter Holmes), and in direct support of their Notice to this Court and all parties, hereby alleges, states, and provides the following:

## Notice of Removal to the United States District Court

1. By the filing of this Notice with the Clerk of this state Court, together with the attached and corresponding petition and warrant for removal that was filed in the United States District Court prior, these state proceedings are now REMOVED, by automatic operation of federal law, and this Defendant now formally notifies the Court and all parties of that same fact.

2. Pursuant to the express and specific language of 28 U.S.C. 1441, et seq., immediately upon the filing of this Notice, with the Clerk of this Court, this case has been already removed; The removal of jurisdiction from this Court is automatic by operation of federal law, and does not require any additional written order from the District Judge to cause this removal to become "effective" – the removal is an automatic judicial event, and immediate by operation of law.

3. Put another way, the United States Supreme Court clarified and established, clear back in 1966: "The petition is now filed in the first instance in the federal court. After notice is given to all adverse parties and a copy of the petition is filed with the state court, removal is effected and state court proceedings cease unless the case is remanded. 28 U. S. C. § 1446 (1964 ed.). See generally, American Law Institute, Study of the Division of Jurisdiction between State and

Federal Courts, Tentative Draft No. 4, p. 153 et seq. (April 25, 1966)." Georgia v. Rachel, 384 U.S. 780, 809 n27, 86 S. Ct. 1783, 16 L. Ed. 2d 925 (1966).

4. Because this cause is now removed, the instant Court is without jurisdiction to effect any judgment in these proceedings (28 U.S.C. § 1446(c)(3)).

5. The petition for warrant of removal to the United States District Court is attached hereto as required by the express language of federal law, as Exhibit B.

WHEREFORE, the undersigned Defendant, Milton Holmes, notifies the Court and all other parties that this cause is now removed, that this court now has absolutely no jurisdiction for any judgment in this cause, bar none, unless and until the United States District Court may or may not remand, and further moves for all other relief that is just and proper in the premises.

Respectfully submitted,

Milton Holmes,
Defendant


Milton Holmes
9236b Halsted St
Chicago, IL 60620

# CERTIFICATE OF SERVICE

I hereby certify: that on this ___7th___ day of December, 2012, a true and complete copy of the foregoing notice of removal to federal court, with required attachment, by hand delivering to address noted below and/or depositing in certified United States postal mail, first class postage pre-affixed, return receipt requested, has been duly served upon the following:

IRA T NEVEL,
Attorney for Plaintiff
175 N FRANKLIN Suite #201
Chicago, IL 60606

Amun Re Barber El

# EXHIBIT

# A

| | |
|---|---|
| 2120 - Served | 2121 - Served |
| 2220 - Not Served | 2221 - Not Served |
| 2320 - Served By Mail | 2321 - Served By Mail |
| 2420 - Served By Publication | 2421 - Served By Publication |
| ⊙ SUMMONS | ○ ALIAS - SUMMONS |

(Rev. 3/21/11) CCCH 0100 A

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT - CHANCERY DIVISION

(Name all parties)

THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-7,

v.

MILTON HOLMES, UNKNOWN TENANTS, UNKNOWN OWNERS AND NON-RECORD CLAIMANTS,

12CH40671

Case Management Date: 1|7|13

Time: 9:30

Courtroom No. 2808

### MORTGAGE FORECLOSURE SUMMONS

To each defendant:

YOU ARE SUMMONED and required to file an appearance, pay the fee of $206.00 (unless the Court determines you cannot afford to pay this fee), and answer or otherwise plead in response to the attached Complaint within 30 days. A copy of the Complaint is attached to this Summons. You can file your appearance and pleadings in the office of the Clerk of this Court in Room 802 of the Richard J. Daley Center, 50 W. Washington St., Chicago, Illinois 60602, Monday through Friday between the hours of 8:30 A.M. and 4:30 P.M.

---
### YOU MAY STILL BE ABLE TO SAVE YOUR HOME.
### DO NOT IGNORE THIS DOCUMENT.
GO TO PAGE 2 OF THIS SUMMONS
FOR INFORMATION ON FREE HELP FROM THE COURT.
---

You must file within 30 days after service of this summons, not counting the day of service.
IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.

To the officer:

This summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this summons shall be returned so endorsed. This summons may not be served later than 30 days after its date.

### THIS IS AN ATTEMPT TO COLLECT A DEBT
### AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Atty. No.: 18837

Name: LAW OFFICES OF IRA T. NEVEL, LLC.

Atty. for: PLAINTIFF

Address: 175 N. FRANKLIN, SUITE 201

City/State/Zip: CHICAGO, IL 60606

Telephone: (312) 357-1125

WITNESS, _____,

DOROTHY BROWN NOV 0 7 2012

_____ Clerk of Court

Date of service: _____,
(To be inserted by officer on copy left with defendant or other person)

Service by Facsimile Transmission will be accepted at: _____

(Area Code)   (Facsimile Telephone Number)

Page 1 of 5

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

# IMPORTANT INFORMATION FOR HOMEOWNERS IN FORECLOSURE
## HOW TO SAVE YOUR PROPERTY - PLEASE READ - DO NOT IGNORE

1. **POSSESSION:** The lawful occupants of a home have the right to live in the home until a judge enters an order for possession. In most cases, if you continue to live in your home, you will have at least nine (9) months before you have to move.

2. **OWNERSHIP:** You continue to own your home until the court rules otherwise.

---

3. **WORKOUT OPTIONS:** The mortgage company does not want to foreclose on your home if there is any way to avoid it. Call your mortgage company: **BANK OF AMERICA 661-951-5722**

   (insert name of homeowner's current mortgage service in bold & 14 point type)

   or its attorneys to find out the alternatives to foreclosure. Call 1-877-895-2444 to obtain help in finding a HUD-certified housing counselor. To get help filing an Appearance and Answer, contact the Chancery Division Advice Desk, Room 1303 of the Richard J. Daley Center, 50 W. Washington St., Chicago, IL 60602, Monday through Friday, 9:00 A.M. to 4:00 P.M. THESE SERVICES ARE FREE. Go to "Notice to Homeowners" after Page 3 of this Summons.

---

4. **LAWYER:** If you do not have a lawyer, you may contact CARPLS Legal Aid Hotline at (312) 738-9200 for legal advice or visit the Advice Desk (see above). You may also call Chicago Volunteer Legal Services at (312) 332-1624 or the Legal Assistance Foundation of Metropolitan Chicago at (312) 341-1070.

---

5. **MEDIATION:** If you need help negotiating with your lender, ask the judge to refer your case to mediation. Mediation is a chance to talk with your lender and try to work out an agreement with the help of a knowledge-able, neutral person. Mediation requires the appearance of you and your lender. Please see # 3 above for help.

---

6. **REINSTATEMENT:** As the homeowner you have the right to bring the mortgage current (that means paying all late payments, penalties, fees and costs) within 90 days after you receive the summons.

7. **REDEMPTION:** As the homeowner you have the right to sell your home, refinance, or pay off the loan during the redemption period, which is at least seven (7) months after you receive the summons.

8. **PAYOFF AMOUNT:** You have the right to obtain a written statement of the amount necessary to pay off your loan. Your mortgage company (identified in #3 above) must provide you this statement within 10 business days of receiving your request, provided that your request is in writing and includes your name, the address of the property, and the mortgage account or loan number. Your first payoff statement will be free.

9. **SURPLUS:** As the homeowner you have the right to petition the court for any excess money (i.e., if your home is sold for more than you owe) that results from a foreclosure sale of your home. In many cases you do not need a lawyer to do this. The Chancery Division Advice Desk, Room 1303 of the Richard J. Daley Center, will assist you in preparing all the necessary papers at no charge. The Advice Desk is open Monday through Friday, 9:00 A.M. to 4:00 P.M.

10. **GET ADVICE:** This information does not replace the advice of a professional. You may have other options. Get professional advice from a lawyer or HUD-certified housing counselor about your rights and options to avoid foreclosure. (See # 3 above.)

---

11. **PROCEED WITH CAUTION:** YOU MAY BE CONTACTED BY PEOPLE OFFERING TO HELP YOU AVOID FORECLOSURE. BEFORE ENTERING INTO ANY TRANSACTION WITH PEOPLE OFFERING TO HELP YOU, PLEASE CONTACT A LAWYER, GOVERNMENT OFFICIAL, OR HUD-CERTIFIED HOUSING COUNSELOR FOR ADVICE.

---

(Rev. 3/21/11) CCCH 0100 B

## INFORMACION IMPORTANTE PARA PROPIETARIOS DE CASA EN PROCESO DE EJECUCION HIPOTECARIA:
### COMO SALVAR SU CASA – POR FAVOR LEA ESTO – NO LO IGNORE -USTED HA RECIBO UN DOCUMENTO LEGAL PORQUE HA SIDO DEMANDADO POR SU BANCO HIPOTECARIO

**1. POSESION:** Los ocupantes legítimos de la vivienda tienen el derecho de vivir en la casa hasta que el juez emita, por escrito, una Orden de Posesión judicial. En la mayoría de los casos, si continúa viviendo en su casa, tendrá por lo menos nueve (9) meses antes que tenga que mudarse.

**2. TITULARIDAD:** Usted sigue siendo propietario de su casa hasta que el juez emita una decisión contraria.

---

**3. OPCIONES DE NEGOCIACION:** El prestamista hipotecario no quiere ejecutar sobre su casa si hay alguna manera de evitarlo. Llame a su prestamista hipotecario:

BANK OF AMERICA 661-951-5722

(Subraye el nombre del actual prestamista hipotecario del propietario en tinta negra y tipo de letra 14)

o a sus abogados para averiguar las alternativas a la ejecución hipotecaria. Llame 1-877-895-2444 para obtener ayuda en buscar un consejero de vivienda certificado por el Departamento de Vivienda y Desarrollo Urbano (HUD en ingles). Para obtener ayuda en archivar su Comparecencia en Juicio o Contestación a la Demanda, acuda a la Mesa de Consejo de la División de Chancery, Cuarto 1303 del Centro Daley, 50 W. Washington St., Chicago, IL 60602, lunes a viernes de 9:00 A.M. a 4:00 P.M. ESTOS SERVICIOS SON GRATUITOS. Véase la "Notificación a Propietarios de Casa" después de la pagina 3 de este Emplazamiento.

---

**4. ABOGADO:** Si no tiene un abogado, puede llamar a la línea gratuita de CARPLS al (312) 738-9200 para asesoría legal y referencias o visite la Mesa de Consejo (véase arriba). O también puede comunicarse con el "Chicago Volunteer Legal Services" al (312) 332-1624 o con el "Legal Assistance Foundation of Metropolitan Chicago" al (312) 341-1070.

---

**5. MEDIACION:** Si necesita ayuda para negociar con su prestamista, pídale al juez que refiera su caso a mediación. Mediación es una oportunidad para hablar con su prestamista y tratar de llegar a un acuerdo con la ayuda de una persona neutral y con conocimiento. Mediación requiere su presencia y la de su prestamista. Puede llevar un abogado, pero no es necesario. Véase # 3 para ayuda.

---

**6. RESTABLECIMIENTO:** Como el propietario usted tiene el derecho de poner al corriente su hipoteca (pagando los pagos retrasados, penalidades, honorarios y costos) dentro de 90 días después de que usted reciba este Emplazamiento.

**7. REDENCION DE LA PROPIEDAD:** Como el propietario usted tiene el derecho de vender su casa, refinanciar, o pagar el total del préstamo durante el período de redención, que es por lo menos siete (7) meses después que reciba este Emplazamiento.

**8. CANTIDAD DEL SALDO:** Tiene el derecho de obtener una declaración por escrito de la cantidad necesaria para pagar su préstamo. Su prestamista hipotecario (identificado en el #3 arriba) debe proporcionarle esta declaración dentro de 10 días laborales posteriores a haber recibido su petición, con tal de que su petición sea por escrito e incluya su nombre, dirección de la propiedad y cuenta hipotecaria o número de préstamo. Su primera declaración del saldo será gratis.

**9. EXCESO DE BIENES:** Como el propietario usted tiene el derecho de solicitar al tribunal el exceso de dinero (si su casa se vende por mas de lo que debe) que resulte de la venta de ejecución de su casa. En la mayoría de los casos no necesita un abogado para hacerlo. La Mesa de Consejo de la División de Chancery, Cuarto 1303 del Centro Richard J. Daley, le ayudara a preparar todos los documentos necesarios gratis. El horario de la Mesa de Consejo es de lunes a viernes de 9:00 A.M. a 4:00 P.M.

**10. OBTENGA ASESORIA:** Esta información no reemplaza asesoría legal de un profesional. Podría tener otras opciones. Obtenga asesoría profesional de un abogado o de un consejero de vivienda certificado por HUD sobre sus derechos y opciones para evitar la ejecución hipotecaria. (Véase el #3 arriba)

---

**11. PROCEDA CON PRECAUCION:** USTED PODRA SER CONTACTADO POR GENTE OFRECIENDOLE AYUDA PARA EVITAR LA EJECUCION HIPOTECARIA. ANTES DE REALIZAR CUALQUIER TRAMITE CON PERSONAS OFRECIENDOLE AYUDA, POR FAVOR COMUNIQUESE CON UN ABOGADO, REPRESENTANTE GUBERNAMENTAL O CONSEJERO DE VIVIENDA CERTIFICADO POR HUD PARA ASESORIA.

---

# NOTICE TO HOMEOWNERS
# FROM CIRCUIT COURT OF COOK COUNTY:
# FREE HELP TO HOMEOWNERS IN FORECLOSURE

## *DO NOT IGNORE THIS PAGE*

You have been served with a Summons and a mortgage foreclosure Complaint that could cause you to lose your home.

> **The Circuit Court of Cook County has a Foreclosure Mediation Program to help you.**
> **This program is FREE.**

You can use the program if:
- You are the owner and occupant of a **one-to-four family residential** property or condominium unit;
- You are the **borrower**;
- The **mortgage** on your owner-occupied residential property is being foreclosed;
- The property being foreclosed is your **primary residence (your home)**;
- The property is located in **Cook County, Illinois**; and
- The foreclosure action has a **Case Management Date** (the date your case is first in front of the judge) **on or after June 11, 2010.**

Mediation is a chance to talk with your lender and try to work out an agreement with the help of a knowledgeable, neutral person.

**TO PARTICIPATE IN THE FORECLOSURE MEDIATION PROGRAM, YOU SHOULD APPEAR IN COURT ON YOUR CASE MANAGEMENT DATE.** This is the first date your case is first in front of the judge, is identified on the first page of your summons, and is scheduled for approximately 60 days after the date of filing of the Complaint. You will receive a notice of this case management date in the mail from the attorney for the lender.

> **DO NOT WAIT. Be sure to OPEN YOUR MAIL. To start receiving help immediately for the Foreclosure Mediation Program, please call 1-877-895-2444. This program is FREE.**

You may be contacted by people offering to help you avoid foreclosure. Before entering into any transaction with a person offering to help you that is not affiliated with the Circuit Court Mediation Program, please contact a lawyer, government official, or HUD-certified housing counselor for advice.

Circuit Court of Cook County Administrative Order No. 2010-01 requires that this notice be attached to all Mortgage Foreclosure Summons.

# NOTIFICACION A PROPIETARIOS DE CASA DEL TRIBUNAL DE CIRCUITO DEL CONDADO DE COOK:

## AYUDA GRATUITA PARA PROPIETARIOS DE CASA EN PROCESO DE EJECUCION HIPOTECARIA

### **NO IGNORE ESTA PAGINA**

**USTED HA RECIBIDO UN DOCUMENTO LEGAL PORQUE HA SIDO DEMANDADO POR SU BANCO HIPOTECARIO.**

Usted ha sido notificado del Emplazamiento y de la Demanda de Ejecución Hipotecaria que puede causar que pierda su casa.

> **El Tribunal de Circuito del Condado de Cook tiene un Programa de Mediación de Ejecución Hipotecaria para ayudarle. Este programa es GRATIS.**

Puede usar este programa si:

- Usted es el propietario y habitante de una propiedad **residencial familiar de 1-4 unidades** o de un condominio;
- Usted es el **prestatario**;
- El **préstamo** de su propiedad residencial habitada por el propietario esta en proceso de ejecución hipotecaria;
- La propiedad en proceso de ejecución hipotecaria es su **residencial principal (su casa)**;
- La propiedad esta ubicada en el **Condado de Cook, Illinois**; y
- La ejecución hipotecaria tiene una **Fecha de Administración de Caso** (la primera fecha en la que usted tiene que presentarse ante el juez) **después del 11 de junio 2010.**

Mediación es la oportunidad de hablar con su prestamista y de tratar de llegar a un acuerdo con la ayuda de una persona neutral y con conocimiento.

**PARA PARTICIPAR EN EL PROGRAMA DE MEDIACION DE EJECUCION HIPOTECARIA, DEBERIA PRESENTARSE EN EL TRIBUNAL EN SU FECHA DE ADMINISTRACION DE CASO.** Esta es la primera fecha en que tiene que presentarse ante el juez, esta fecha se encuentra en la primera pagina de su Emplazamiento y es fijada aproximadamente 60 días después de la fecha en que se entabló la Demanda. El abogado del prestamista le enviara por correo una notificación de esta fecha de administración de caso.

> **NO ESPERE. Asegúrese de ABRIR SU CORREO. Para empezar a recibir ayuda immediata del Programa de Mediación de Ejecución Hipotecario, llame al 1-877-895-2444. Este programa es GRATIS.**

Usted podrá ser contactado por gente ofreciéndole ayuda para evitar la ejecución hipotecaria. Antes de realizar cualquier trámite con personas ofreciéndole ayuda, que no estén afiliados con el Programa de Mediación del Tribunal de Circuito, por favor comuníquese con un abogado, representante gubernamental o consejero de vivienda certificado por HUD para asesoría.

**La Orden No. 2010-01 del Tribunal de Circuito del Condado de Cook requiere que esta notificación sea incluida con todos los Emplazamientos de Ejecución Hipotecaria.**

## NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT
## (the Act), 15 U.S.C., SECTION 1601, AS AMENDED

1.     This is an attempt to collect a debt.  Any information acquired in the conduct of this matter will be used for that purpose.

2.     The amount of the debt is stated in Paragraph 3(j) of the Complaint to Foreclose Mortgage attached hereto.

3.     The Plaintiff, as named in the attached Summons and Complaint, is the creditor to whom the debt is owed, or is the servicing agent for the creditor to whom the debt is owed.

4.     The debt described in the Complaint attached hereto and evidenced by the copy of the Mortgage and Note attached hereto, will be assumed to be valid by the creditor's law firm unless the debtor, within thirty (30) days after the receipt of this notice, disputes in writing the validity of the debt or some portion thereof.

**This thirty (30) day period, if exercised, will take priority over all deadlines which you have under State or Federal law under this Summons.**

5.     If the debtor notifies the creditor's law firm in writing, within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

6.     The name of the original creditor is set forth in the Mortgage and Note attached hereto.  If the creditor named as Plaintiff in the attached Summons and Complaint is not the original creditor, and if the debtor makes a written request to the creditor's law firm, within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

**Should the thirty (30) day period herein be exercised, it shall have priority over all other deadlines contained in this Summons.**

7.     Written requests should be addressed to LAW OFFICES OF IRA T. NEVEL, L.L.C., Fair Debt Collection Department, 175 North Franklin, Suite 201, Chicago, Illinois  60606.

**SERVICE LIST**

MILTON HOLMES
8825 S. MORGAN ST.
CHICAGO, IL 60620

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

THE BANK OF NEW YORK MELLON F/K/A THE BANK
OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE
HOLDERS OF CWABS INC., ASSET-BACKED
CERTIFICATES, SERIES 2007-7,

        Plaintiff(s),

vs.

MILTON HOLMES, UNKNOWN TENANTS, UNKNOWN
OWNERS AND NON-RECORD CLAIMANTS,

        Defendant(s).

**12CH40671**

Case No.

8825 S. MORGAN ST.
CHICAGO, IL 60620

## COMPLAINT TO FORECLOSE MORTGAGE

1.   Plaintiff, THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-7 ("Plaintiff"), files this complaint to foreclose the mortgage hereinafter described made by MILTON HOLMES ("Borrower") in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER ("Mortgagee").

2.   Attached as Exhibit "A" is a copy of the Mortgage and as Exhibit "B" is a copy of the Installment Note ("Note") secured thereby.

3.   Information Concerning Mortgage:

      (a)  Nature of Instrument:  Mortgage

      (b)  Date of Mortgage: March 30, 2007

      (c)  Name or names of Mortgagor: MILTON HOLMES

      (d)  Name of original Mortgagee: MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER

      (e)  Date of recording: April 5, 2007
          Place of recording:  Cook County Recorder's Office

      (f)  Identification of recording: Document No. 0709501093

      (g)  Interest subject to the Mortgage: Fee simple.

      (h)  Amount of original indebtedness, including subsequent advances made under the Mortgage: $103,500.00

      (i)  Legal description and address of mortgaged premises:

THE NORTH 17.5 FEET OF LOT 38 AND THE SOUTH 15 FEET OF LOT 39 IN BLOCK 13, IN COLES SUBDIVISION OF THE NORTH 90.37 ACRES OF THAT PART OF THE NORTHEAST 1/4 LYING NORTHWEST OF THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD OF SECTION 5, TOWNSHIP 37 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as: 8825 S. MORGAN ST., CHICAGO, IL 60620

PIN No: 25-05-213-040

(j)   Statements as to defaults: Default was made in the payment of the installments of principal and interest falling due under the terms of the Note; said default occurring on June 1, 2012, and there remains due and owing on the Note as of October 1, 2012:

| Principal: | $97,382.83 |
|---|---|
| Per Diem Interest: | $27.86 |

(k)   Name or names of present owner or owners of the Real Estate:  MILTON HOLMES

(l)   Name or names of other persons who are joined as Defendants and whose interest in or lien on the mortgaged Real Estate is sought to be terminated: UNKNOWN TENANTS, UNKNOWN OWNERS and NON-RECORD CLAIMANTS.

(m)   Name or names of Defendants claimed to be personally liable for deficiency, if any: MILTON HOLMES, unless defendant(s) have had personal liability on the subject mortgage Note discharged in a Bankruptcy proceeding, or otherwise released.

(n)   Capacity in which Plaintiff brings this foreclosure suit:  Plaintiff is the legal holder of the indebtedness. Assignment of mortgage attached as Exhibit "C".

(o)   Facts in support of shortened redemption period, if sought: None at the time of filing this complaint; however, should the property become abandoned during the pendency of this action, it is requested that the Court make a finding of abandonment and shorten the redemption period.

(p)   Facts in support of request for attorneys' fees, costs and expenses: Attorneys' fees, costs and expenses incurred in connection with this foreclosure action are deemed to be additional indebtedness secured by the Mortgage pursuant to the terms of the Mortgage.

(q)   Facts in support of a request for appointment of mortgagee in possession or for appointment of receiver, and identity of such receiver, if sought: None at the time of filing this complaint.

(r)   Offer to mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: None at the time of the filing of this complaint.

(s) Name or names of defendants whose right to possess the mortgaged real estate, after the confirmation of a foreclosure sale, is sought to be terminated and, if not elsewhere stated, the facts in support thereof: MILTON HOLMES, UNKNOWN TENANTS, UNKNOWN OWNERS and NON-RECORD CLAIMANTS.

## REQUEST FOR RELIEF

Plaintiff requests:

1. A judgment of foreclosure and sale.

2. A judgment for attorneys' fees, costs and expenses.

3. An order granting a shortened redemption period, if sought.

4. An order approving the foreclosure sale and an order granting possession.

5. A personal judgment for a deficiency, if sought, unless defendant(s) have had personal liability on the subject mortgage note discharged in a Bankruptcy proceeding, or otherwise released.

6. A finding that should the real estate be improved with a manufactured or mobile home, it is found that the improvement has been permanently affixed to the real estate and deemed to be real estate, transferable hereunder at any forthcoming Sheriff or Judicial Sale, without transfer of any title.

7. Such other and further relief as this Court deems just

THE BANK OF NEW YORK MELLON F/K/A THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATE HOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-7

BY: _____
LAW OFFICES OF IRA T. NEVEL, LLC
BY ONE OF ITS ATTORNEYS

Attorney No. 18837
**LAW OFFICES OF IRA T. NEVEL, LLC**
Ira T. Nevel
Timothy R. Yueill
Greg Elsnic
Marny Joy Abbott
Richard Drezek
Nathan J. Buikema
175 North Franklin St. Suite 201
Chicago, Illinois 60606
(312) 357-1125
RA # 12-03974

STEWART TITLE OF ILLINOIS
2 N. LaSalle Street
Suite 625
Chicago, IL 60602
312-849-4243

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 97410-0423

Prepared By:
ANELLA THOMPSON
AMERICA'S WHOLESALE LENDER

2375 N GLENVILLE DR
RGV-B-195
RICHARDSON
TX 7508

Doc#:  0709501083 Fee: $66.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 04/05/2007 10:16 AM  Pg: 1 of 22

[Space Above This Line For Recording Data]

518574
[Escrow/Closing #]

[Doc ID #]

# MORTGAGE

MIN

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  MARCH 30, 2007        , together with all Riders to this document.

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16

VMP -6A(IL) (0010).02     CHL (08/05)(d)  VMP Mortgage Solutions, Inc. (800)521-7291                   Form 3014  1/01
CONV/VA

STEWART TITLE OF ILLINOIS
2 N. LaSalle Street
Suite 625
Chicago, IL 60602
312-849-4243







EXHIBIT
A

DOC ID #:

**(B) "Borrower" is**
MILTON HOLMES, AN UNMARRIED MAN

Borrower is the mortgagor under this Security Instrument.
**(C) "MERS"** is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(D) "Lender"** is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
4500 Park Granada MSN# 5VB-314, Calabasas, CA 91302-1613
**(E) "Note"** means the promissory note signed by Borrower and dated MARCH 30, 2007 . The
Note states that Borrower owes Lender
ONE HUNDRED THREE THOUSAND FIVE HUNDRED and 00/100

Dollars (U.S. $ 103,500.00 ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than APRIL 01, 2037 .
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)

DOC ID #: [REDACTED]

damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the

| COUNTY | of | COOK |
|--------|----|------|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                                     which currently has the address of

8825 S MORGAN ST, CHICAGO
[Street/City]

Illinois 60620-2614 ("Property Address");
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

-6A(IL) (0010).02        CHL (08/05)             Page 3 of 16                         Form 3014 1/01

DOC ID #:

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

DOC ID # ▓▓▓▓▓▓▓

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

▓ -6A(IL) (0010).02     CHL (08/05)            Page 5 of 16                              Form 3014  1/01

DOC ID ████████

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance than Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

DOC ID█

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

DOC ID 

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a

DOC ID

condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

DOC I

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

DOC ID

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

DOC I

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

DOC

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall

DOC

further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. Placement of Collateral Protection Insurance. Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

DOC

_____ (Seal)
HILTON HOLMES                                    -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                                 -Borrower

-6A(IL) (0010).02   CHL (08/05)          Page 15 of 15                Form 3014  1/01

STATE OF ILLINOIS,
I, _Francesca E Siegert_ DOC
and state do hereby certify that _____ , a Notary Public in and for said county

_Milton Holmes_

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said
instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
     Given under my hand and official seal, this _____ day of _____ 07

My Commission Expires:

                                        Notary Public

"OFFICIAL SEAL"
Francesca E. Siegert
Notary Public, State of Illinois
My Commission Exp. 10/21/2007

SCHEDULE A
ALTA Commitment
File No.: ~~~~~~~

### LEGAL DESCRIPTION

The North 17.5 feet of Lot 38 and the South 15 feet of Lot 39 in Block 13, in Coles Subdivision of the North 90.37 acres of that part of the Northeast ¼ lying Northwest of the Chicago Rock Island and Pacific Railroad of Section 5, Township 37 North, Range 14 East of the Third Principal Meridian, in Cook County, Illinois.

PIN# 25-05-213-040

_____
Authorized Signature

**STEWART TITLE COMPANY**

# 1-4 FAMILY RIDER
### (Assignment of Rents)

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
PARCEL ID #:

Prepared By:
ANELLA THOMPSON
AMERICA'S WHOLESALE LENDER

2375 N GLENVILLE DR RGV-B-195
RICHARDSON
TX 75082

518574
[Escrow/Closing #]                [Doc ID #]

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Page 1 of 5

-57R (0411)     CHL (11/04)(d)
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: _____

Form 3170 1/01





THIS 1-4 FAMILY RIDER is made this THIRTIETH day of MARCH, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to AMERICA'S WHOLESALE LENDER

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

8825 S MORGAN ST, CHICAGO, IL 60620-2614

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

-57R (0411)       CHL (11/04)          Page 2 of 5              Initials: _____

Form 3170 1/01

DOC ID ▓▓▓▓▓▓▓

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

-57R (0411)      CHL (11/04)           Page 3 of 5                    Initials: ▓▓▓

Form 3170 1/01

DOC ID

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

I. CROSS-DEFAULT PROVISION. Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

-57R (0411)    CHL (11/04)          Page 4 of 5          Initials: _____
                                                          Form 3170 1/01

DOC ID

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this 1-4 Family Rider.

_____ (Seal)
MILTON HOLMES                    - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

_____ (Seal)
                                 - Borrower

-57R (0411)    CHL (11/04)          Page 5 of 5                Form 3170 1/01

Prepared by: ANELLA THOMPSON

LOAN # 

# NOTE

MARCH 30, 2007          ADDISON          ILLINOIS
(Date)               (City)            (State)

8825 S MORGAN ST, CHICAGO, IL 60620-2614
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 103,500.00    (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is AMERICA'S WHOLESALE LENDER

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 10.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay Principal and interest by making a payment every month.

I will make my monthly payment on the FIRST          day of each month beginning on MAY 01, 2007          . I will make these payments every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on APRIL 01, 2037          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 931.31

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A prepayment of all of the unpaid principal is known as a "Full Prepayment." A prepayment of only part of the unpaid principal is known as a "Partial Prepayment." If I make a prepayment, I will tell the Note Holder in writing 30 days before that I am doing so.

I may make a Full Prepayment or a Partial Prepayment without paying any penalty. If I make a Partial Prepayment equal to one or more of my monthly payments, my due date may be advanced no more than one month. If I make any other Partial Prepayment, I must still make each later payment as it becomes due and in the same amount. I may make a Full Prepayment or Partial Prepayment at any time.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment.

● BC-ILLINOIS FIXED RATE NOTE
2D607-IL (D4/04)(d)

Page 1 of 3





EXHIBIT B



LOAN #: ▮▮▮▮▮▮▮

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payment

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. APPLICABLE LAW**

I agree that this agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of the state where the real property is located. If a law, which applies to this loan and sets maximum loan charges is finally interpreted so that the interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such interest or other charge shall be reduced by the amount necessary to reduce the interest or other charge to the permitted limit; and (b) any sums already collected from me which exceed permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a Partial Prepayment, but in no event will a prepayment charge be assessed if the Note Holder chooses to reduce my Principal balance by applying such excess amounts.

**11. SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

MAR. 30. 2007 11:05AM     STEWART TITLE                    NO. 8830   P. 17

LOAN #: ████████

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

_MILTON HOLMES_                                                     -Borrower

_____                   -Borrower

_____                   -Borrower

_____                   -Borrower

*[Sign Original Only]*

BOHLL NODE FIXED RATE NOTE
20857-2. (5/02)                          Page 3 of 3

**MILTON HOLMES**
8825 S MORGAN STREET, CHICAGO, IL 60620

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS that MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR AMERICA'S WHOLESALE LENDER, Party of the first part, in consideration of the sum of TEN DOLLARS ($10.00) lawful money, in hand paid, hereby has assigned/transferred to THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWABS INC., ASSET-BACKED CERTIFICATES, SERIES 2007-7, party of the second part, and by these presents has granted, bargained, sold, assigned, transferred and set over unto said party of the second part a certain Note and Mortgage bearing the date, March 30, 2007, made by MILTON HOLMES, and recorded on April 5, 2007, as Document Number 0709501093, with the Cook County Recorder's Office, Illinois, upon the following described parcel of land situated in Cook County, State of Illinois, to wit:

THE NORTH 17.5 FEET OF LOT 38 AND THE SOUTH 15 FEET OF LOT 39 IN BLOCK 13 IN COLES SUBDIVISION OF THE NORTH 90.37 ACRES OF THAT PART OF THE NORTHEAST 1/4 LYING NORTHWEST OF THE CHICAGO, ROCK ISLAND AND PACIFIC RAILROAD OF SECTION 5, TOWNSHIP 37 NORTH, RANGE 14 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Common Address: 8825 S MORGAN STREET, CHICAGO, IL 60620

Tax Number: 25-05-213-040-0000

together with the Note or obligation described in said Mortgage, and the money due and to become due thereon, with interest.



**MILTON HOLMES**
8825 S MORGAN STREET, CHICAGO, IL 60620

**MORTGAGOR NAME: MILTON HOLMES**

TO HAVE AND TO HOLD the same unto the said party of the second part and assigns forever.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., AS NOMINEE FOR AMERICA'S
WHOLESALE LENDER

BY: _____
Cecilia Rodriguez
Assistant Secretary

ATTEST:
Aida Duenas
Assistant Secretary

ACKNOWLEDGMENT
State of California
County of _Ventura_ )

On _Oct 29, 2012_ before me, __S. Greenwald Notary Public__
(Insert name and title of the officer)

Personally appeared __Cecilia Rodriguez__
Who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s),
or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

Witness my hand and official seal.

Signature __S. Greenwald__ (Seal)

S. GREENWALD
Commission # 1893744
Notary Public - California
Los Angeles County
My Comm. Expires Jun 25, 2014

PREPARED BY:
Attorney No. 18837
**LAW OFFICES OF IRA T. NEVEL, LLC**
Ira T. Nevel
Timothy R. Yueill
Greg Elsnic
Mamy Joy Abbott
Richard Drezek
Nathan J. Buikema
175 North Franklin St. Suite 201
Chicago, Illinois 60606
(312) 357-1125
LW
# 12-03974
RETURN TO: BOX 167

# EXHIBIT

# B



Doc#: 1221639056 Fee: $42.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 08/03/2012 02:18 PM Pg: 1 of 3

Milton Holmes
8825 South Morgan Avenue
Chicago, Illinois  [60620]

## AFFIDAVIT OF STATUS OF **MILTON HOLMES**

STATE OF ILLINOIS )
) *ss*
COUNTY OF COOK )

Comes now, **Milton Holmes**, your Affiant, being competent to testify and being over the age of 21 years of age, after first being duly sworn according to law to tell the truth to the facts related herein states the he has firsthand knowledge of the facts stated herein and believes these facts to be true to the best of his knowledge.

1. That your Affiant is one of the People of these united States of America, being a creation of God and **born/domiciled** in one of the several States.
2. Your Affiant is a living, breathing, sentient being on the land, a Natural Person, and therefore is not and cannot be any ARTIFICIAL PERSON and, therefore, is exempt from any and all identifications, treatments, and requirements as any ARTIFICIAL PERSON pursuant to any process, law, code, or statute or any color thereof.
3. Your Affiant notices that in these united States of America, the authority of any and all governments resides in the People, the Natural Persons, of the land, for government is a fiction of the mind and can only be created by the People, effected by the People, and overseen by the People for the benefit of only the People.
4. Your Affiant at all times claims all and waives none of **his** God given inherent, unlimited, unalienable, secured and guaranteed Rights pursuant to the Declaration of Independence and the Constitution of the united States of America as ratified 1791 with the Articles of the Amendments.
5. Your Affiant notices that pursuant to the Constitution of the united States of America as ratified 1791 with the Articles of the Amendments, Article VI paragraph 2, "This Constitution and the Laws of the united States which shall be made in Pursuance thereof; and all Treaties made, under the authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding".
6. Your affiant notices, that as a matter of their lawful compliance to the referenced Constitution, any of the People, while functioning in any Public capacity, in return



STATE OF ILLINOIS )
                  ) SS
COOK COUNTY      )

# CERTIFICATE OF AUTHORITY

I, DAVID ORR, County Clerk of Cook County in the State of Illinois, certify that

## DAVIS, CORDELL B

the person named in the seal and signature on the attached document, is a Notary Public for the State of Illinois and was authorized to act as such at the time of the document's notarization.

To verify this Certificate of Authority for a Notarial Act, I have affixed my signature and seal of office this ___3___ day of ___August, 2012___

_____
**Cook County Clerk, State of Illinois**

_____
**Deputy**

for the trust of the other People, are granted limited delegated authority of and by the People, with specific duties delineated in accordance thereof, shall only do so pursuant to a lawfully designated, sworn and subscribed Oath of Office and with any and all bonds and other requirements thereof, to ensure their faithful performance to the other People.

7. Your Affiant notices that the only court lawfully authorized by the People pursuant to said Constitution to hear matters in controversy of the People, civil or criminal, is a court that conforms to and functions in accordance with Article III Section 2 of said Constitution in which all officers of the court have and abide by their sworn and subscribed oaths of office supporting and defending the Rights of the People, and in which all matters are heard in accordance with all aspects of due process of law and only Trial by jury and in keeping with the Amendments V, VI, and VII.

8. Your Affiant notices that pursuant to this supreme Law of the Land and the God given Rights secured and guaranteed therein, said Constitution is established to ensure that the dominion granted by God to all People, on this land, shall endure, and ensure forever that this People on this land be free from any and all slavery, indenturement, tyranny, and oppression under color of any law, statute, code, policy, procedure, or of any other type.

9. Your Affiant further notices that pursuant to said Constitution, Affiant cannot be compelled, manipulated, extorted, tricked, threatened, placed under duress, or coerced, or so effected by any Natural Person, who individually, or in any capacity as or under any Artificial Person, agency, entity, officer, or party, into the waiving of any of Affiant's Rights, or to act in contradiction thereof, or to act in opposite of the moral conscience and dominion granted Affiant by God; nor can Affiant be deprived of any of these Rights, privileges, and immunities, except by lawful process in accordance with said Constitution, without that Natural and/or Artificial Person, in whatever capacity, in so doing, causing injury to your Affiant and thereby committing numerous crimes, requiring lawful punishment therefrom.

Further, Affiant sayeth naught.

Signature _____     Date 3/  / 12
                **Milton Holmes**

State of Illinois
County of Cook
Subscribed and sworn to (or affirmed) before me on this 3rd day of August, 2012
by **Milton Holmes**, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

_____
Notary Public                    (Seal)

OFFICIAL SEAL
CORDELL B DAVIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:03/08/13

Page 2 of 2

# EXHIBIT

# C

Econ 4899. 22

Digitized by Google

HARVARD COLLEGE LIBRARY
GIFT OF THE
OVERSEERS COMMITTEE
TO VISIT THE
DEPARTMENT OF ECONOMICS

# NATIONAL BANK ACT OF 1864.

*An Act to provide a National Currency, secured by a pledge of United States Bonds, and to provide for the circulation and redemption thereof.*  Approved, June 3, 1864.

*A Bureau of Currency shall be established.  The Officers shall give bonds ; and shall not be interested in any National Banks.*

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That there shall be established in the Treasury Department a separate bureau, which shall be charged with the execution of this and all other laws that may be passed by Congress respecting the issue and regulation of a national currency secured by United States bonds.  The chief officer of the said bureau shall be denominated the Comptroller of the Currency, and shall be under the general direction of the Secretary of the Treasury.  He shall be appointed by the President, on the recommendation of the Secretary of the Treasury, by and with the advice and consent of the Senate, and shall hold his office for the term of five years unless sooner removed by the President, upon reasons to be communicated by him to the Senate ; he shall receive an annual salary of five thousand dollars ; he shall have a competent deputy, appointed by the Secretary, whose salary shall be two thousand five hundred dollars, and who shall possess the power and perform the duties attached by law to the office of Comptroller during a vacancy in such office and during his absence or inability ; he shall employ, from time to time, the necessary clerks to discharge such duties as he shall direct, which clerks shall be appointed and classified by the Secretary of the Treasury in the manner now provided by law.  Within fifteen days from the time of notice of his appointment the Comptroller shall take and subscribe the oath of office prescribed by the Constitution and laws of the United States ; and he shall give to the United States a bond in the penalty of one hundred thousand dollars, with not less than two responsible sureties, to be approved by the Secretary of the Treasury, conditioned for the faithful discharge of the duties of his office.  The Deputy Comptroller so appointed shall also take the oath of office prescribed by the Constitution and laws of the United States, and shall give a like bond in the penalty of fifty thousand dollars.  The Comp-.

1

Digitized by Google

2

troller and Deputy Comptroller shall not, either directly or indirectly, be interested in any Association issuing national currency under the provisions of this Act.

*Seal of Office.    Instruments under such seal evidence in Courts.*

SEC. 2. *And be it further enacted,* That the Comptroller of the Currency, with the approval of the Secretary of the Treasury, shall devise a seal, with suitable inscriptions, for his office, a description of which, with a certificate of approval by the Secretary of the Treasury, shall be filed in the office of the Secretary of State with an impression thereof, which shall thereupon become the seal of office of the Comptroller of the Currency, and the same may be renewed when necessary.  Every certificate, assignment, and conveyance executed by the Comptroller, in pursuance of any authority conferred on him by law, and sealed with his seal of office, shall be received in evidence in all places and courts whatsoever ; and all copies of papers in the office of the Comptroller, certified by him and authenticated by the said seal, shall in all cases be evidence equally and in like manner as the original.  An impression of such seal directly on the paper shall be as valid as if made on wax or wafer.

*Rooms, with fire-proof vaults, shall be assigned to the Comptroller.*

SEC. 3. *And be it further enacted,* That there shall be assigned to the Comptroller of the Currency by the Secretary of the Treasury suitable rooms in the Treasury building for conducting the business of the Currency Bureau, in which shall be safe and secure fire-proof vaults, in which it shall be the duty of the Comptroller to deposit and safely keep all the plates, not necessarily in the possession of engravers or printers, and other valuable things belonging to his department ; and the Comptroller shall from time to time furnish the necessary furniture, stationery, fuel, lights, and other proper conveniences for the transaction of the said business.

*Definition of term "United States Bonds."*

SEC. 4. *And be it further enacted,* That the term " United States bonds," as used in this act, shall be construed to mean all registered bonds now issued, or that may hereafter be issued, on the faith of the United States by the Secretary of the Treasury in pursuance of law.

*Associations for banking purposes authorized.    Articles of association ; what to contain.*

SEC. 5. *And be it further enacted,* That Associations for carrying on the business of banking may be formed by any number of persons, not less in any case than five, who shall enter into articles of association, which shall specify in general terms the object for which the Association is formed, and may contain any other provisions, not inconsistent with the provisions of this Act, which the Association may see fit to adopt for the regulation of the business of the Association and the conduct of

Digitized by Google

3

its affairs, which said articles shall be signed by the persons uniting to form the Association, and a copy of them forwarded to the Comptroller of the Currency, to be filed and preserved in his office.

### Organization certificate required ; what it shall specify.

Sec. 6. *And be it further enacted,* That the persons uniting to form such an Association shall, under their hands, make an organization certificate, which shall specify—

*First.* The name assumed by such Association, which name shall be subject to the approval of the Comptroller.

*Second.* The place where its operations of discount and deposit are to be carried on, designating the State, Territory, or District, and also the particular county and city, town or village.

*Third.* The amount of its capital stock, and the number of shares into which the same shall be divided.

*Fourth.* The names and places of residence of the shareholders, and the number of shares held by each of them.

*Fifth.* A declaration that said certificate is made to enable such persons to avail themselves of the advantages of this Act.

The said certificate shall be acknowledged before a judge of some court of record or a notary public, and such certificate, with the acknowledgment thereof authenticated by the seal of such court or notary, shall be transmitted to the Comptroller of the Currency, who shall record and carefully preserve the same in his office. Copies of such certificate, duly certified by the Comptroller, and authenticated by his seal of office, shall be legal and sufficient evidence in all courts and places within the United States, or the jurisdiction of the government thereof, of the existence of such association, and of every other matter or thing which could be proved by the production of the original certificate.

### Capital of Associations in no place to be less than fifty thousand dollars.

Sec. 7. *And be it further enacted,* That no Association shall be organized under this Act with a less capital than one hundred thousand dollars, nor, in a city whose population exceeds fifty thousand persons, with a less capital than two hundred thousand dollars : *Provided,* That banks with a capital of not less than fifty thousand dollars may, with the approval of the Secretary of the Treasury, be organized in any place the population of which does not exceed six thousand inhabitants.

### Corporate powers of Associations.

Sec. 8. *And be it further enacted,* That every Association, formed pursuant to the provisions of this Act, shall, from the date of the execution of its organization certificate, be a body corporate, but shall transact no business except such as may be incidental to its organization and necessarily preliminary, until authorized by the Comptroller of the Currency to commence the business of banking. Such Association shall

Digitized by Google

4

have power to adopt a corporate seal, and shall have succession by the name designated in its organization certificate, for the period of twenty years from its organization, unless sooner dissolved according to the provisions of its articles of association, or by the act of its shareholders owning two-thirds of its stock, or unless the franchise shall be forfeited by a violation of this Act; by such name it may make contracts, sue and be sued, complain and defend, in any court of law and equity, as fully as natural persons; it may elect or appoint directors, and by its board of directors appoint a president, vice-president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss said officers or any of them at pleasure, and appoint others to fill their places, and exercise under this act all such incidental powers as shall be necessary to carry on the business of banking by discounting and negotiating promissory notes, drafts, bills of exchange, and other evidences of debt; by receiving deposits; by buying and selling exchange, coin and bullion; by loaning money on personal security; by obtaining, issuing and circulating notes according to the provisions of this Act; and its board of directors shall also have power to define and regulate by by-laws, not inconsistent with the provisions of this Act, the manner in which its stock shall be transferred; its directors elected or appointed, its officers appointed, its property transferred, its general business conducted, and all the privileges granted by this Act to Associations organized under it shall be exercised and enjoyed; and its usual business shall be transacted at an office or banking-house located in the place specified in its organization certificate.

### *Directors and their qualifications.*

Sec. 9. *And be it further enacted,* That the affairs of every Association shall be managed by not less than five directors, one of whom shall be the president. Every director shall, during his whole term of service, be a citizen of the United States; and at least three-fourths of the directors shall have resided in the State, Territory or district in which such Association is located one year next preceding their election as directors, and be residents of the same during their continuance in office. Each director shall own, in his own right, at least ten shares of the capital stock of the Association of which he is a director. Each director, when appointed or elected, shall take an oath that he will, so far as the duty devolves on him, diligently and honestly administer the affairs of such Association, and will not knowingly violate, or willingly permit to be violated, any of the provisions of this Act, and that he is the *bona fide* owner, in his own right, of the number of shares of stock required by this Act, subscribed by him, or standing in his name on the books of the Association, and that the same is not hypothecated, or in any way pledged, as security for any loan or debt; which oath, subscribed by himself, and certified by the officer before whom it is taken, shall be immediately transmitted to the Comptroller of the Currency, and by him filed and preserved in his office.

Digitized by Google

5

### Directors to be elected annually, in January. Vacancies; how filled.

Sec. 10. *And be it further enacted,* That the directors of any Association first elected or appointed shall hold their places until their successors shall be elected and qualified. All subsequent elections shall be held annually on such day in the month of January as may be specified in the articles of association; and the directors so elected shall hold their places for one year, and until their successors are elected and qualified. But any director, ceasing to be the owner of the requisite amount of stock, or having in any other manner become disqualified, shall thereby vacate his place. Any vacancy in the board shall be filled by appointment by the remaining directors, and any director so appointed shall hold his place until the next election. If from any cause an election of directors shall not be made at the time appointed, the Association shall not for that cause be dissolved, but an election may be held on any subsequent day, thirty days notice thereof in all cases having been given in a newspaper published in the city, town or county in which the Association is located; and if no newspaper is published in such city, town or county, such notice shall be published in a newspaper published nearest thereto. If the articles of association do not fix the day on which the election shall be held, or if the election should not be held on the day fixed, the day for the election shall be designated by the board of directors in their by-laws, or otherwise: *Provided,* That if the directors fail to fix the day, as aforesaid, shareholders representing two-thirds of the shares may.

### Each Shareholder entitled to one vote; may vote by proxies. No Officer shall act as proxy.

Sec. 11. *And be it further enacted,* That in all elections of directors, and in deciding all questions at meetings of shareholders, each shareholder shall be entitled to one vote on each share of stock held by him. Shareholders may vote by proxies duly authorized in writing; but no officer, clerk, teller, or book-keeper of such Association shall act as proxy; and no shareholder whose liability is past due and unpaid shall be allowed to vote.

### Shares one hundred dollars each. Liability of Shareholders.

Sec. 12. *And be it further enacted,* That the capital stock of any Association formed under this Act shall be divided into shares of one hundred dollars each, and be deemed personal property, and transferable on the books of the Association in such manner as may be prescribed in the by-laws or articles of association; and every person becoming a shareholder by such transfer shall, in proportion to his shares, succeed to all the rights and liabilities of the prior holder of such shares, and no change shall be made in the articles of association by which the rights, remedies, or security of the existing creditors of the Association shall be impaired. The shareholders of each Association formed under the

Digitized by Google

6

provisions of this Act, and of each existing bank or Banking Association that may accept the provisions of this Act, shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such Association to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares; except that shareholders of any Banking Association now existing under State laws, having not less than five millions of dollars of capital actually paid in, and a surplus of twenty per centum on hand, both to be determined by the Comptroller of the Currency, shall be liable only to the amount invested in their shares; and such surplus of twenty per centum shall be kept undiminished, and be in addition to the surplus provided for in this Act; and if at any time there shall be a deficiency in said surplus of twenty per centum, the said Banking Association shall not pay any dividends to its shareholders until such deficiency shall be made good; and in case of such deficiency, the Comptroller of the Currency may compel said Banking Association to close its business and wind up its affairs under the provisions of this Act. And the Comptroller shall have authority to withhold from an Association his certificate authorizing the commencement of business, whenever he shall have reason to suppose that the shareholders thereof have formed the same for any other than the legitimate objects contemplated by this Act.

### How an Association may increase or reduce its capital.

SEC. 13. *And be it further enacted,* That it shall be lawful for any Association formed under this Act, by its articles of association, to provide for an increase of its capital from time to time as may be deemed expedient, subject to the limitations of this Act: *Provided,* That the maximum of such increase in the articles of Association shall be determined by the Comptroller of the Currency; and no increase of capital shall be valid until the whole amount of such increase shall be paid in, and notice thereof shall have been transmitted to the Comptroller of the Currency, and his certificate obtained specifying the amount of such increase of capital stock, with his approval thereof, and that it has been duly paid in as part of the capital of such Association. And every Association shall have power, by the vote of shareholders owning two-thirds of its capital stock, to reduce the capital of such Association to any sum not below the amount required by this Act, in the formation of Associations: *Provided,* That by no such reduction shall its capital be brought below the amount required by this Act for its outstanding circulation, nor shall any such reduction be made until the amount of the proposed reduction has been reported to the Comptroller of the Currency and his approval thereof obtained.

### Fifty per cent. of capital required before commencement of business.

SEC. 14. *And be it further enacted,* That at least fifty per centum of the capital stock of every Association shall be paid in before it shall be

Digitized by Google

7

authorized to commence business; and the remainder of the capital stock of such Association shall be paid in installments of at least ten per centum each on the whole amount of the capital as frequently as one installment at the end of each succeeding month from the time it shall be authorized by the Comptroller to commence business; and the payment of each installment shall be certified to the Comptroller, under oath, by the president or cashier of the Association.

### Directors may sell stock of delinquent shareholders.

Sec. 15. *And be it further enacted,* That if any shareholder, or his assignee, shall fail to pay any installment on the stock when the same is required by the foregoing section to be paid, the directors of such Association may sell the stock of such delinquent shareholder, at public auction, having given three weeks previous notice thereof in a newspaper published and of general circulation in the city or county where the Association is located, and if no newspaper is published in said city or county, then in a newspaper published nearest thereto, to any person who will pay the highest price therefor, and not less than the amount then due thereon, with the expenses of advertisement and sale; and the excess, if any, shall be paid to the delinquent shareholder. If no bidder can be found who will pay for such stock the amount due thereon to the Association, and the cost of advertisement and sale, the amount previously paid shall be forfeited to the Association, and such stock shall be sold as the directors may order, within six months from the time of such forfeiture, and if not sold it shall be canceled and deducted from the capital stock of the Association; and if such cancellation and reduction shall reduce the capital of the Association below the minimum of capital required by this Act, the capital stock shall, within thirty days from the date of such cancellation, be increased to the requirements of the Act; in default of which a receiver may be appointed to close up the business of the Association according to the provisions of the fiftieth section of this Act.

### Deposit of United States Bonds with the Treasurer of the United States, required of each association.

Sec. 16. *And be it further enacted,* That every Association, after having complied with the provisions of this Act preliminary to the commencement of banking business under its provisions, and before it shall be authorized to commence business, shall transfer and deliver to the Treasurer of the United States, any United States registered bonds bearing interest to an amount not less than thirty thousand dollars nor less than one-third of the capital stock paid in, which bonds shall be deposited with the Treasurer of the United States and by him safely kept in his office until the same shall be otherwise disposed of, in pursuance of the provisions of this Act; and the Secretary of the Treasury is hereby authorized to receive and cancel any United States coupon bonds, and to issue in lieu thereof registered bonds of like amount, bear-

Digitized by Google

8

ing a like rate of interest, and having the same time to run; and the deposit of bonds shall be, by every Association, increased as its capital may be paid up or increased, so that every Association shall at all times have on deposit with the Treasurer registered United States bonds to the amount of at least one-third of its capital stock actually paid in: *Provided,* That nothing in this section shall prevent an Association that may desire to reduce its capital or to close up its business and dissolve its organization from taking up its bonds upon returning to the Comptroller its circulating notes in the proportion hereinafter named in this Act, nor from taking up any excess of bonds, beyond one-third of its capital stock and upon which no circulating notes have been delivered.

### *Comptroller shall examine condition of association before granting certificate.*

SEC. 17. *And be it further enacted,* That whenever a certificate shall have been transmitted to the Comptroller of the Currency, as provided in this Act, and the Association transmitting the same shall notify the Comptroller that at least fifty per centum of its capital stock has been paid in as aforesaid, and that such Association has complied with all the provisions of this Act as required to be complied with before such Association shall be authorized to commence the business of banking, the Comptroller shall examine into the condition of such Association, ascertain especially the amount of money paid in on account of its capital, the name and place of residence of each of the directors of such Association, and the amount of the capital stock of which each is the *bona fide* owner, and generally whether such Association has complied with all the requirements of this Act to entitle it to engage in the business of banking; and shall cause to be made, and attested by the oaths of a majority of the directors and by the president or cashier of such Association, a statement of all the facts necessary to enable the Comptroller to determine whether such Association is lawfully entitled to commence the business of banking under this Act.

### *If condition of Association is found to be satisfactory, certificate to be granted by Comptroller—to be published for sixty days.*

SEC. 18. *And be it further enacted,* That if, upon a careful examination of the facts so reported, and of any other facts which may come to the knowledge of the Comptroller, whether by means of a special commission appointed by him for the purpose of inquiring into the condition of such Association or otherwise, it shall appear that such Association is lawfully entitled to commence the business of banking, the Comptroller shall give to such Association a certificate, under his hand and official seal, that such Association has complied with all the provisions of this Act required to be complied with before being entitled to commence the business of banking under it, and that such Association is authorized to commence said business accordingly; and it shall be the duty of the Association to cause said certificate to be published in some newspaper

Digitized by Google

9

published in the city or county where the Association is located, for at least sixty days next after the issuing thereof: *Provided*, That if no newspaper is published in such city or county, the certificate shall be published in a newspaper published nearest thereto.

### *Form of transfer of bonds by association to the Treasurer. Bonds to be countersigned by the Comptroller.*

SEC. 19. *And be it further enacted,* That all transfers of United States bonds which shall be made by any Association under the provisions of this Act, shall be made to the Treasurer of the United States in trust for the Association, with a memorandum written or printed on each bond, and signed by the cashier or some other officer of the Association making the deposit, a receipt therefor to be given to said Association, or by the Comptroller of the Currency, or by a clerk appointed by him for that purpose, stating that it is held in trust for the Association on whose behalf such transfer is made, and as security for the redemption and payment of any circulating notes that have been or may be delivered to such Association. No assignment or transfer of any such bonds by the Treasurer shall be deemed valid, or of binding force and effect, unless countersigned by the Comptroller of the Currency. It shall be the duty of the Comptroller of the Currency to keep in his office a book in which shall be entered the name of every Association from whose accounts such transfer of bonds is made by the Treasurer, and the name of the party to whom such transfer is made; and the par value of the bonds so transferred shall be entered therein; and it shall be the duty of the Comptroller, immediately upon countersigning and entering the same, to advise by mail the Association from whose account such transfer was made, of the kind and numerical designation of the bonds and the amount thereof so transferred.

### *Duties of Comptroller upon transfer of bonds.*

SEC. 20. *And be it further enacted,* That it shall be the duty of the Comptroller of the Currency to countersign and enter in the book, in the manner aforesaid, every transfer or assignment of any bonds held by the Treasurer presented for his signature; and the Comptroller shall have at all times during office hours access to the books of the Treasurer, for the purpose of ascertaining the correctness of the transfer or assignment presented to him to countersign; and the Treasurer shall have the like access to the book above mentioned, kept by the Comptroller, during office hours, to ascertain the correctness of the entries in the same; and the Comptroller shall also at all times have access to the bonds on deposit with the Treasurer, to ascertain their amount and condition.

### *Circulating notes to be issued by the Comptroller.*

SEC. 21. *And be it further enacted,* That upon the transfer and delivery of bonds to the Treasurer, as provided in the foregoing section, the Association making the same shall be entitled to receive from the Comp-

Digitized by Google

10

troller of the Currency circulating notes of different denominations, in blank, registered and countersigned as hereinafter provided, equal in amount to ninety per centum of the current market value of the United States bonds so transferred and delivered, but not exceeding ninety per centum of the amount of said bonds at the par value thereof, if bearing interest at a rate not less than five per centum per annum ; and at no time shall the total amount of such notes, issued to any such Association, exceed the amount at such time actually paid in of its capital stock.

*Limit of circulating notes three hundred millions. Denominations and form of notes.*

SEC. 22. *And be it further enacted,* That the entire amount of notes for circulation to be issued under this Act shall not exceed three hundred millions of dollars. In order to furnish suitable notes for circulation, the Comptroller of the Currency is hereby authorized and required, under the direction of the Secretary of the Treasury, to cause plates and dies to be engraved, in the best manner, to guard against counterfeiting and fraudulent alterations, and to have printed therefrom, and numbered, such quantity of circulating notes, in blank, of the denominations of one dollar, two dollars, three dollars, five dollars, ten dollars, twenty dollars, fifty dollars, one hundred dollars, five hundred dollars, and one thousand dollars, as may be required to supply, under this Act, the Associations entitled to receive the same; which notes shall express upon their face that they are secured by United States bonds, deposited with the Treasurer of the United States by the written or engraved signatures of the Treasurer and Register, and by the imprint of the seal of the Treasury ; and shall also express upon their face the promise of the Association receiving the same to pay on demand, attested by the signatures of the president or vice-president and cashier. And the said notes shall bear such devices and such other statements, and shall be in such form, as the Secretary of the Treasury shall, by regulation, direct : *Provided,* That not more than one-sixth part of the notes furnished to an Association shall be of a less denomination than five dollars, and that after specie payments shall be resumed no Association shall be furnished with notes of a less denomination than five dollars.

*Notes to circulate as money, and receivable for taxes, excises, public lands, and all other dues to the United States, except import duties.*

SEC. 23. *And be it further enacted,* That after any such Association shall have caused its promise to pay such notes on demand to be signed by the president or vice-president and cashier thereof, in such manner as to make them obligatory promissory notes, payable on demand, at its place of business, such Association is hereby authorized to issue and circulate the same as money ; and the same shall be received at par in all parts of the United States in payment of taxes, excises, public lands, and all other dues to the United States, except for duties on imports ; and also for all salaries and other debts and demands owing by the United

Digitized by Google

11

States to individuals, corporations, and Associations within the United States, except interest on the public debt and in redemption of the national currency. And no such Association shall issue post notes or any other notes to circulate as money than such as are authorized by the foregoing provisions of this Act.

### Mutilated Notes to be replaced by New Issues.

SEC. 24. *And be it further enacted,* That it shall be the duty of the Comptroller of the Currency to receive worn-out or mutilated circulating notes issued by any such Banking Association; and also, on due proof of the destruction of any such circulating notes, to deliver in place thereof to such association other blank circulating notes to an equal amount. And such worn-out or mutilated notes, after a memorandum shall have been entered in the proper books, in accordance with such regulations as may be established by the Comptroller, as well as all circulating notes which shall have been paid or surrendered to be canceled, shall be burned to ashes in presence of four persons—one to be appointed by the Secretary of the Treasury, one by the Comptroller of the Currency, one by the Treasurer of the United States, and one by the Association, under such regulations as the Secretary of the Treasury may prescribe. And a certificate of such burning, signed by the parties so appointed, shall be made in the books of the Comptroller, and a duplicate thereof forwarded to the Association whose notes are thus canceled.

### Periodical examination of Bonds deposited.

SEC. 25. *And be it further enacted,* That it shall be the duty of every Banking Association, having bonds deposited in the office of the Treasurer of the United States, once or oftener in each fiscal year, and at such time or times during the ordinary business hours as said officer or officers may select, to examine and compare the bonds so pledged, with the books of the Comptroller and the accounts of the Association, and, if found correct, to execute to the said Treasurer a certificate setting forth the different kinds and the amounts thereof, and that the same are in the possession and custody of the Treasurer at the date of such certificate. Such examination may be made by an officer or agent of such Association, duly appointed in writing for that purpose, whose certificate before mentioned shall be of like force and validity as if executed by such president or cashier; and a duplicate signed by the Treasurer shall be retained by the Association.

### Bonds transferred to be held exclusively for the Security of the Circulating Notes, but the Interest to be paid to the Association. When depreciated, to be exchanged for other Bonds.

SEC. 26. *And be it further enacted,* That the bonds transferred to and deposited with the Treasurer of the United States, as hereinbefore provided, by any Banking Association for the security of its circulating notes, shall be held exclusively for that purpose, until such notes shall

Digitized by Google

**12**

be redeemed, except as provided in this act ; but the Comptroller of the
Currency shall give to any such Banking Association powers of attorney
to receive and appropriate to its own use the interest on the bonds which
it shall have so transferred to the Treasurer ; but such powers shall be-
come inoperative whenever such Banking Association shall fail to redeem
its circulating notes as aforesaid. Whenever the market or cash value
of any bonds deposited with the Treasurer of the United States, as afore-
said, shall be reduced below the amount of the circulation issued for the
same, the Comptroller of the Currency is hereby authorized to demand
and receive the amount of such depreciation in other United States bonds
at cash value or in money, from the Association receiving said bills, to
be deposited with the Treasurer of the United States, as long as such
depreciation continues. And said Comptroller, upon the terms pre-
scribed by the Secretary of the Treasury, may permit an exchange to be
made of any of the bonds deposited with the Treasurer by an Associa-
tion for other bonds of the United States authorized by this Act to be
received as security for circulating notes, if he shall be of opinion that
such an exchange can be made without prejudice to the United States,
and he may direct the return of any of said bonds to the Banking Asso-
ciation which transferred the same, in sums of not less than one thousand
dollars, upon the surrender to him and the cancellation of a proportion-
ate amount of such circulating notes : *Provided,* That the remaining
bonds which shall have been transferred by the Banking Association
offering to surrender circulating notes shall be equal to the amount
required for the circulating notes not surrendered by such Banking
Association, and that the amount of bonds in the hands of the Treasurer
shall not be diminished below the amount required to be kept on deposit
with him by this act : *And provided,* That there shall have been no failure
by such Association to redeem its circulating notes, and no other viola-
tion by such Association of the provisions of this act, and that the mar-
ket or cash value of the remaining bonds shall not be below the amount
required for the circulation issued for the same.

*Penalty for issuing or delivering Notes, except as herein provided.*

SEC. 27. *And be it further enacted,* That it shall be unlawful for any
officer acting under the provisions of this act to countersign or deliver
to any Association, or to any other company or person, any circulating
notes contemplated by this act, except as hereinbefore provided, and in
accordance with the true intent and meaning of this act. And any officer
who shall violate the provisions of this section shall be deemed guilty of
a high misdemeanor, and on conviction thereof shall be punished by fine
not exceeding double the amount so countersigned and delivered, and im-
prisonment not less than one year and not exceeding fifteen years, at the
discretion of the court in which he shall be tried.

*Real Estate, when and how held by Associations.*

SEC. 28. *And be it further enacted,* That it shall be lawful for any
such Association to purchase, hold and convey real estate as follows :

Digitized by Google

*First.* Such as shall be necessary for its immediate accommodation in the transaction of its business.

*Second.* Such as shall be mortgaged to it in good faith by way of security for debts previously contracted.

*Third.* Such as shall be conveyed to it in satisfaction of debts previously contracted in the course of its dealings.

*Fourth.* Such as it shall purchase at sales under judgments, decrees or mortgages held by such Association, or shall purchase to secure debts due to said Association.

Such Association shall not purchase or hold real estate in any other case or for any other purpose than as specified in this section; nor shall it hold the possession of any real estate under mortgage, or hold the title and possession of any real estate purchased to secure any debts due to it for a longer period than five years.

### Limitation of Liability of Borrowers.

Sec. 29. *And be it further enacted,* That the total liabilities to any Association, of any person, or of any company, corporation or firm, for money borrowed, including in the liabilities of a company or firm the liabilities of the several members thereof, shall at no time exceed one-tenth part of the amount of the capital stock of such Association actually paid in: *Provided,* That the discount of *bona-fide* bills of exchange drawn against actually existing values, and the discount of commercial or business paper actually owned by the person or persons, corporation or firm negotiating the same, shall not be considered as money borrowed.

### Limit of Rate of Interest. Penalties for Usury.

Sec. 30. *And be it further enacted,* That every Association may take, receive, reserve and charge on any loan or discount made, or upon any note, bill of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State or Territory where the bank is located, and no more, except that where by the laws of any State a different rate is limited for banks of issue organized under State laws, the rates so limited shall be allowed for Associations organized in any such State under this act. And when no rate is fixed by the laws of the State or Territory, the bank may take, receive, reserve or charge a rate not exceeding seven per centum, and such interest may be taken in advance, reckoning the days for which the note, bill or other evidence of debt has to run. And the knowingly taking, receiving, reserving or charging a rate of interest greater than aforesaid shall be held and adjudged a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon. And in case a greater rate of interest has been paid, the person or persons paying the same, or their legal representatives, may recover back, in any action of debt, twice the amount of the interest thus paid, from the Association taking or receiving the same: *Provided,* That such action is commenced within two years from the time the usurious transaction occurred. But the purchase, discount or sale of a *bona-fide* bill of

Digitized by Google

**14**

exchange, payable at another place than the place of such purchase, discount or sale, at not more than the current rate of exchange for sight drafts in addition to the interest, shall not be considered as taking or receiving a greater rate of interest.

### *Reserve of Legal Money prescribed.*

SEC. 31. *And be it further enacted,* That every Association in the cities hereinafter named shall, at all times, have on hand, in lawful money of the United States, an amount equal to at least twenty-five per centum of the aggregate amount of its notes in circulation and of its deposits ; and every other Association shall at all times have on hand, in lawful money of the United States, an amount equal to at least fifteen per centum of the aggregate amount of its notes in circulation, and of its deposits. And whenever the lawful money of any Association in any of the cities hereinafter named shall be below the amount of twenty-five per centum of its circulation and deposits, and whenever the lawful money of any other Association shall be below fifteen per centum of its circulation and deposits, such Association shall not increase its liabilities by making any new loans or discounts otherwise than by discounting or purchasing bills of exchange payable at sight, nor make any dividend of its profits, until the required proportion between the aggregate amount of its outstanding notes of circulation and deposits and its lawful money of the United States shall be restored : *Provided,* That three-fifths of said fifteen per centum may consist of balances due to an Association available for the redemption of its circulating notes from Associations approved by the Comptroller of the Currency, organized under this act, in the cities of Saint Louis, Louisville, Chicago, Detroit, Milwaukee, New Orleans, Cincinnati, Cleveland, Pittsburg, Baltimore, Philadelphia, Boston, New York, Albany, Leavenworth, San Francisco and Washington City : *Provided also,* That clearing-house certificates, representing specie or lawful money specially deposited for the purpose of any clearing-house Association, shall be deemed to be lawful money in the possession of any Association belonging to such clearing-house holding and owning such certificate, and shall be considered to be a part of the lawful money which such Association is required to have under the foregoing provisions of this section : *Provided,* That the cities of Charleston and Richmond may be added to the list of cities in the National Associations of which other Associations may keep three-fifths of their lawful money, whenever, in the opinion of the Comptroller of the Currency, the condition of the Southern States will warrant it. And it shall be competent for the Comptroller of the Currency to notify any Association whose lawful money reserve, as aforesaid, shall be below the amount to be kept on hand, as aforesaid, to make good such reserve ; and if such Association shall fail for thirty days thereafter so to make good its reserve of lawful money of the United States, the Comptroller may, with the concurrence of the Secretary of the Treasury, appoint a receiver to wind up the business of such Association, as provided in this Act.

Digitized by Google

15

### *Redemption of Notes at par in New York or other Cities.*

Sec. 32. *And be it further enacted,* That each Association organized in any of the cities named in the foregoing section shall select, subject to the approval of the Comptroller of the Currency, an Association in the city of New York at which it will redeem its circulating notes at par. And each of such Associations may keep one half of its lawful money reserve in cash deposits in the city of New York. And each Association not organized within the cities named within the preceding section shall select, subject to the approval of the Comptroller of the Currency, an Association in either of the cities named in the preceding section at which it will redeem its circulating notes at par; and the Comptroller shall give public notice of the names of the Associations so selected at which redemptions are to be made by the respective Associations, and of any change that may be made of the Association at which the notes of any Association are redeemed. If any Association shall fail either to make the selection or to redeem its notes aforesaid, the Comptroller of the Currency may, upon receiving satisfactory evidence thereof, appoint a receiver, in the manner provided for in this Act, to wind up its affairs: *Provided,* That nothing in this section shall relieve any Association from its liability to redeem its circulating notes at its own counter, at par, in lawful money, on demand. *And provided further,* that every Association formed or existing under the provisions of this Act shall take and receive at par, for any debt or liability to said Association, any and all notes or bills issued by any Association existing under and by virtue of this Act.

### *Semi-annual Dividends.*

Sec. 33. *And be it further enacted,* That the directors of any Association may, semi-annually, each year, declare a dividend of so much of the net profits of the Association as they shall judge expedient; but each Association shall, before the declaration of a dividend, carry one-tenth part of its net profits of the preceding half year to its surplus fund until the same shall amount to twenty per centum of its capital stock.

### *Quarterly and monthly statements of resources and liabilities required.*

Sec. 34. *And be it further enacted,* That every Association shall make to the Comptroller of the Currency a report, according to the form which may be prescribed by him, verified by the oath or affirmation of the president or cashier of such Association; which report shall exhibit in detail, and under appropriate heads, the resources and liabilities of the Association before the commencement of business on the morning of the first Monday of the months of January, April, July and October of each year, and shall transmit the same to the Comptroller within five days thereafter. And any bank failing to make and transmit such report shall be subject to a penalty of one hundred dollars for each day after five days that such report is delayed beyond the time.

Digitized by Google

16

And the Comptroller shall publish abstracts of said reports in a newspaper to be designated by him for that purpose, in the city of Washington, and the separate report of each Association shall be published in a newspaper in the place where such Association is established, or if there be no newspaper at such place, then in a newspaper published at the nearest place thereto, at the expense of the Association making such report. In addition to the quarterly reports required by this section, every Association shall, on the first Tuesday of each month, make to the Comptroller of the Currency a statement, under the oath of the president or cashier, showing the condition of the Association making such statement, on the morning of the day next preceding the date of such statement, in respect to the following items and particulars, to wit : average amount of loans and discounts, specie and other lawful money belonging to the Association, deposits, and circulation. And Associations in other places than those cities named in the thirty-first section of this act shall also return the amount due them available for the redemption of their circulation.

### Loans by an Association on or purchase of its own stock forbidden.

Sec. 35. *And be it further enacted,* That no Association shall make any loan or discount on the security of the shares of its own capital stock, nor be the purchaser or holder of any such shares, unless such security or purchase shall be necessary to prevent loss upon a debt previously contracted in good faith ; and stock so purchased or acquired shall, within six months from the time of its purchase, be sold or disposed of at public or private sale, in default of which a receiver may be appointed to close up the business of the Association, according to the provisions of this Act.

### Limitation of indebtedness prescribed.

Sec. 36. *And be it further enacted,* That no Association shall at any time be indebted, or in any way liable, to an amount exceeding the amount of its capital stock at such time actually paid in and remaining undiminished by losses or otherwise, except on the following accounts, that is to say :

*First.* On account of its notes of circulation.

*Second.* On account of moneys deposited with, or collected by, such Association.

*Third.* On account of bills of exchange or drafts drawn against money actually on deposit to the credit of such Association, or due thereto.

*Fourth.* On account of liabilities to its stockholders for dividends and reserved profits.

### Hypothecation of circulating notes prohibited.

Sec. 37. *And be it further enacted,* That no Association shall, either

Digitized by Google

**17**

directly or indirectly, pledge or hypothecate any of its notes of circulation, for the purpose of procuring money to be paid in on its capital stock, or to be used in its banking operations, or otherwise; nor shall any Association use its circulating notes, or any part thereof, in any manner or form, to create or increase its capital stock.

### Withdrawal of capital stock prohibited.

SEC. 38. *And be it further enacted*, That no Association, or any member thereof, shall, during the time it shall continue its banking operations, withdraw, or permit to be withdrawn, either in form of dividends or otherwise, any portion of its capital. And if losses shall at any time have been sustained by any such Association equal to or exceeding its undivided profits then on hand, no dividend shall be made; and no dividend shall ever be made by any Association while it shall continue its banking operations to an amount greater than its net profits then on hand, deducting therefrom its losses and bad debts. And all debts due to any Association, on which interest is past due and unpaid for a period of six months, unless the same shall be well secured and shall be in process of collection, shall be considered bad debts within the meaning of this act: *Provided*, That nothing in this section shall prevent the reduction of the capital stock of the Association under the thirteenth section of this Act.

### Circulation of depreciated currency forbidden.

SEC. 39. *And be it further enacted*, That no Association shall at any time pay out on loans or discounts, or in purchasing drafts or bills of exchange, or in payment of deposits, or in any other mode, pay or put in circulation the notes of any bank or Banking Association which shall not, at any such time, be receivable at par, on deposit and in payment of debts by the Association so paying out or circulating such notes; nor shall it knowingly pay out or put in circulation any notes issued by any bank or Banking Association which at the time of such paying out or putting in circulation is not redeeming its circulating notes in lawful money of the United States.

### List of shareholders to be kept, and to be open to inspection.

SEC. 40. *And be it further enacted*, That the president and cashier of every such Association shall cause to be kept at all times a full and correct list of the names and residences of all the shareholders in the Association, and the number of shares held by each, in the office where its business is transacted; and such list shall be subject to the inspection of all the shareholders and creditors of the Association, and the officers authorized to assess taxes under State authority, during business hours of each day in which business may be legally transacted; and a copy of such list, on the first Monday of July in each year, verified by the oath of such president or cashier, shall be transmitted to the Comptroller of the Currency.

**3**

Digitized by Google

18

*Plates and dies to remain under direction of Comptroller.—An-*
*nual taxes to be paid by each Association.—Returns to be*
*made of amount of circulation.*

Sec. 41: *And be it further enacted,* That the plates and special dies
to be procured by the Comptroller of the Currency for the printing of
such circulating notes shall remain under his control and direction, and
the expenses necessarily incurred in executing the provisions of this Act
respecting the procuring of such notes, and all other expenses of the
bureau, shall be paid out of the proceeds of the taxes or duties now or
hereafter to be assessed on the circulation, and collected from Associa-
tions organized under this Act. And in lieu of all existing taxes, every
Association shall pay to the Treasurer of the United States, in the
months of January and July, a duty of one half of one per centum each
half year from and after the first day of January, eighteen hundred and
sixty-four, upon the average amount of its notes in circulation, and a
duty of one quarter of one per centum each half year upon the average
amount of its deposits, and a duty of one quarter of one per centum
each half year, as aforesaid, on the average amount of its capital stock
beyond the amount invested in United States bonds; and in case of de-
fault in the payment thereof by any Association, the duties aforesaid
may be collected in the manner provided for the collection of United
States duties of other corporations, or the Treasurer may reserve the
amount of said duties out of the interest, as it may become due, on the
bonds deposited with him by such defaulting Association. And it shall
be the duty of each Association, within ten days from the first days of
January and July of each year, to make a return, under the oath of its
president or cashier, to the Treasurer of the United States, in such form
as he may prescribe, of the average amount of its notes in circulation,
and of the average amount of its deposits, and of the average amount of
its capital stock beyond the amount invested in United States bonds, for
the six months next preceding said first days of January and July as
aforesaid, and in default of such return, and for each default thereof, each
defaulting Association shall forfeit and pay to the United States the sum
of two hundred dollars, to be collected either out of the interest as it
may become due such Association on the bonds deposited with the
Treasurer, or, at his option, in the manner in which penalties are to be
collected of other corporations under the laws of the United States; and
in case of such default the amount of the duties to be paid by such As-
sociation shall be assessed upon the amount of notes delivered to such
Association by the Comptroller of the Currency, and upon the highest
amount of its deposits and capital stock, to be ascertained in such other
manner as the Treasurer may deem best: *Provided,* That nothing in this
Act shall be construed to prevent all the shares in any of the said As-
sociations, held by any person or body corporate, from being included
in the valuation of the personal property of such person or corporation
in the assessment of taxes imposed by or under State authority at the
place where such bank is located and not elsewhere, but not at a greater

Digitized by Google

19

rate than is assessed upon other moneyed capital in the hands of individual citizens of such State : *Provided further*, That the tax so imposed under the laws of any State upon the shares of any of the Associations authorized by this Act shall not exceed the rate imposed upon the shares in any of the banks organized under authority of the State where such Association is located : *Provided also*, That nothing in this Act shall exempt the real estate of Associations from either State, county, or municipal taxes to the same extent, according to its value, as other real estate is taxed.

### *Provision for liquidation by vote of two thirds of stock.*

SEC. 42. *And be it further enacted*, That any Association may go into liquidation and be closed by the vote of its shareholders owning two thirds of its stock. And whenever such vote shall be taken, it shall be the duty of the board of directors to cause notice of this fact to be certified, under the seal of the Association, by its president or cashier, to the Comptroller of the Currency, and the publication thereof to be made for a period of two months in a newspaper published in the city of New York, and also in a newspaper published in a city or town in which the Association is located, and if no newspaper be there published, then in the newspaper published nearest thereto, that said Association is closing up its affairs, and notifying the holders of its notes and other creditors to present the notes and other claims against the Association for payment. And at any time after the expiration of one year from the time of the publication of such notice as aforesaid, the said Association may pay over to the Treasurer of the United States the amount of its outstanding notes in the lawful money of the United States, and take up the bonds which said Association has on deposit with the Treasurer for the security of its circulating notes ; which bonds shall be assigned to the bank in the manner specified in the 19th section of this Act, and from that time the outstanding notes of said Association shall be redeemed at the Treasury of the United States, and the said Association and the shareholders thereof shall be discharged from all liabilities therefor.

### *Circulating notes, when redeemed by the Treasurer, to be burnt quarterly.*

SEC. 43. *And be it further enacted*, That the Treasurer, on receiving from an Association lawful money for the payment and redemption of its outstanding notes, as provided for in the preceding section of this Act, shall execute duplicate receipts therefor, one to the Association and the other to the Comptroller of the Currency, stating the amount received by him, and the purpose for which it has been received, which amount shall be paid into the Treasury of the United States, and placed to the credit of such Association upon redemption account. And it shall be the duty of the Treasurer, whenever he shall redeem any of the notes of said Association, to cause the same to be mutilated, and charged to

Digitized by Google

20

the redemption account of said Association; and all notes so redeemed
by the Treasurer shall, every three months, be certified to and burned in
the manner prescribed in the twenty-fourth section of this Act.

### State Banks may be converted into National Associations.

Sec. 44. *And be it further enacted,* That any bank incorporated by
special law, or any banking institution organized under a general law of
any State, may, by authority of this Act, become a National Association
under its provisions, by the name prescribed in its organization certifi-
cate; and in such case, the articles of association and the organization
certificate required by this Act may be executed by a majority of the
directors of the bank or banking institution; and said certificate shall de-
clare that the owners of two thirds of the capital stock have authorized
the directors to make such certificate, and to change and convert the said
bank or banking institution into a National Association under this Act.
And a majority of the directors, after executing said articles of associa-
tion and organization certificate, shall have power to execute all other
papers, and to do whatever may be required to make its organization
perfect and complete as a National Association. The shares of any such
bank may continue to be for the same amount each as they were before
said conversion, and the directors aforesaid may be the directors of the
Association until others are elected or appointed in accordance with the
provisions of this Act; and any State bank which is a stockholder in any
other bank, by authority of State laws, may continue to hold its stock,
although either bank, or both, may be organized under and have accepted
the provisions of this Act. When the Comptroller shall give to such
Association a certificate, under his hand and official seal, that the pro-
visions of this Act have been complied with, and that it is authorized
to commence the business of banking under it, the Association shall have
the same powers and privileges, and shall be subject to the same duties,
responsibilities, and rules, in all respects as are prescribed in this Act for
other Associations organized under it, and shall be held and regarded as
an Association under this Act: *Provided, however,* That no such Asso-
ciation shall have a less capital than the amount prescribed for Banking
Associations under this Act.

### National Banks to be special depositaries of public moneys, and financial agents of the Government.

Sec. 45. *And be it further enacted,* That all Associations under this
Act, when designated for that purpose by the Secretary of the Treasury,
shall be depositaries of public money, except receipts from customs,
under such regulations as may be prescribed by the Secretary; and they
may also be employed as financial agents of the government; and they
shall perform all such reasonable duties, as depositaries of public mon-
eys and financial agents of the government, as may be required of them.
And the Secretary of the Treasury shall require of the Associations thus
designated satisfactory security by the deposit of United States bonds

Digitized by Google

21

and otherwise, for the safe-keeping and prompt payment of the public money deposited with them, and for the faithful performance of their duties as financial agents of the government: *Provided*, That every Association which shall be selected and designated as receiver or depositary of the public money shall take and receive at par all of the national currency bills, by whatever Association issued, which have been paid in to the government for internal revenue, or for loans or stocks.

### *Protest of notes on failure to redeem, and duty of Association thereupon.*

SEC. 46. *And be it further enacted*, That if any such Association shall at any time fail to redeem, in the lawful money of the United States, any of its circulating notes, when payment thereof shall be lawfully demanded, during the usual hours of business, at the office of such Association, or at its place of redemption aforesaid, the holder may cause the same to be protested, in one package, by a notary public, unless the president or cashier of the Association whose notes are presented for payment, or the president or cashier of the Association at the place at which they are redeemable, shall offer to waive demand and notice of the protest, and shall, in pursuance of such offer, make, sign, and deliver to the party making such demand an admission in writing, stating the time of the demand, the amount demanded, and the fact of the non-payment thereof; and such notary public, on making such protest, or upon receiving such admission, shall forthwith forward such admission or notice of protest to the Comptroller of the Currency, retaining a copy thereof. And after such default, on examination of the facts by the Comptroller, and notice by him to the Association, it shall not be lawful for the Association suffering the same to pay out any of its notes, discount any notes or bills, or otherwise prosecute the business of banking, except to receive and safely keep money belonging to it, and to deliver special deposits: *Provided*, That if satisfactory proof be produced to such notary public that the payment of any such notes is restrained by order of any court of competent jurisdiction, such notary public shall not protest the same; and when the holder of such notes shall cause more than one note or package to be protested on the same day, he shall not receive pay for more than one protest.

### *Appointment of Special Agent on notice of protest.*

SEC. 47. *And be it further enacted*, That on receiving notice that any such Association has failed to redeem any of its circulating notes, as specified in the next preceding section, the Comptroller of the Currency, with the concurrence of the Secretary of the Treasury, may appoint a special agent (of whose appointment immediate notice shall be given to such Association), who shall immediately proceed to ascertain whether such Association has refused to pay its circulating notes, in the lawful money of the United States, when demanded as aforesaid, and report to the Comptroller the fact so ascertained; and if, from such protest or the report so made, the Comptroller shall be satisfied that such Association has refused to pay its circulating notes as aforesaid, and is in default, he

Digitized by Google

shall, within thirty days after he shall have received notice of such failure, declare the United States bonds and securities pledged by such Association forfeited to the United States, and the same shall thereupon be forfeited accordingly. And thereupon the Comptroller shall immediately give notice, in such manner as the Secretary of the Treasury shall, by general rules or otherwise, direct, to the holders of the circulating notes of such Association, to present them for payment at the Treasury of the United States, and the same shall be paid as presented in lawful money of the United States: whereupon said Comptroller may, in his discretion, cancel an amount of bonds pledged by such Association, equal at current market rates, not exceeding par, to the notes paid. And it shall be lawful for the Secretary of the Treasury, from time to time, to make such regulations respecting the disposition to be made of such circulating notes after presentation thereof for payment as aforesaid, and respecting the perpetuation of the evidence of the payment thereof, as may seem to him proper; but all such notes, on being paid, shall be canceled. And for any deficiency in the proceeds of the bonds pledged by such Association, when disposed of as hereinafter specified, to reimburse to the United States the amount so expended in paying the circulating notes of such Association, the United States shall have a first and paramount lien upon all the assets of such Association; and such deficiency shall be made good out of such assets in preference to any and all other claims whatsoever, except the necessary costs and expenses of administering the same.

### Sale at auction of bonds of suspended banks.

SEC. 48. *And be it further enacted,* That whenever the Comptroller shall become satisfied, as in the last preceding section specified, that any Association has refused to pay its circulating notes as therein mentioned, he may, instead of canceling the United States bonds pledged by such Association, as provided in the next preceding section, cause so much of them as may be necessary to redeem the outstanding circulating notes of such Association to be sold at public auction in the city of New York, after giving thirty days' notice of such sale to such Association.

### Such sale may, in the discretion of the Comptroller be at private sale—but in that case for not less than par or the market value.

SEC. 49. *And be it further enacted,* That the Comptroller of the Currency may, if he shall be of opinion that the interests of the United States will be best promoted thereby, sell at private sale any of the bonds pledged by such Association, and receive therefor either money or the circulating notes of such failing Association: *Provided,* That no such bonds shall be sold by private sale for less than par, nor less than the market value thereof at the time of sale: *And provided, further,* That no sales of any such bonds, either public or private, shall be complete until the transfer thereof shall have been made with the formalities prescribed in this Act.

### Receiver of Suspended Associations, and his Duties.

SEC. 50. *And be it further enacted,* That on becoming satisfied, as

Digitized by Google

23

specified in this Act, that any Association has refused to pay its circulating notes as therein mentioned, and is in default, the Comptroller of the Currency may forthwith appoint a receiver, and require of him such bond and security as he shall deem proper, who, under the direction of the Comptroller, shall take possession of the books, records and assets of every description of such Association; collect all debts, dues and claims belonging to such Association, and, upon the order of a court of record of competent jurisdiction, may sell or compound all bad or doubtful debts, and, on a like order, sell all the real and personal property of such Association, on such terms as the court shall direct; and may, if necessary to pay the debts of such Association, enforce the individual liability of the stockholders provided for by the twelfth section of this act; and such receiver shall pay over all money so made to the Treasurer of the United States, subject to the order of the Comptroller of the Currency, and also make report to the Comptroller of the Currency of all his acts and proceedings. The Comptroller shall thereupon cause notice to be given, by advertisement in such newspapers as he may direct, for three consecutive months, calling on all persons who may have claims against such Association to present the same, and to make legal proof thereof. And from time to time the Comptroller, after full provision shall have been first made for refunding to the United States any such deficiency in redeeming the notes of such Association as is mentioned in this Act, shall make a ratable dividend of the money so paid over to him by such receiver on all such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction; and from time to time, as the proceeds of the assets of such Association shall be paid over to him, he shall make further dividends, as aforesaid, on all claims previously proved or adjudicated; and the remainder of such proceeds, if any, shall be paid over to the shareholders of such Association, or their legal representatives, in proportion to the stock by them respectively held: *Provided, however,* That if such Association, against which proceedings have been so instituted, on account of any alleged refusal to redeem its circulating notes as aforesaid, shall deny having failed to do so, such Association may, at any time within ten days after such Association shall have been notified of the appointment of an agent, as provided in this act, apply to the nearest circuit or district or territorial court of the United States, to enjoin further proceedings in the premises; and such court, after citing the Comptroller of the Currency to show cause why further proceedings should not be enjoined, and after the decision of the court or finding of a jury that such Association has not refused to redeem its circulating notes, when legally presented, in the lawful money of the United States, shall make an order enjoining the Comptroller and any receiver acting under his direction, from all further proceedings on account of such alleged refusal.

*Fees for Protests, Examinations and Receiverships; by whom paid.*

Sec. 51. *And be it further enacted,* That all fees for protesting the notes issued by any such Banking Association shall be paid by the person procuring the protest to be made, and such Banking Association shall

Digitized by Google

be liable therefor; but no part of the bonds pledged by such Banking Association, as aforesaid, shall be applied to the payment of such fees. And all expenses of any preliminary or other examinations into the condition of any Association shall be paid by such Association; and all expenses of any receivership shall be paid out of the assets of such Association before distribution of the proceeds thereof.

## Transfer of Assets by an Association after Insolvency, in prejudice of rights of Creditors, void.

Sec. 52. *And be it further enacted,* That all transfer of the notes, bonds, bills of exchange, and other evidences of debt owing to any Association, or of deposits to its credit; all assignments of mortgages, sureties on real estate, or of judgments or decrees in its favor; all deposits of money, bullion or other valuable thing for its use, or for the use of any of its shareholders or creditors; and all payments of money to either, made after the commission of an act of insolvency, or in contemplation thereof, with a view to prevent the application of its assets in the manner prescribed by this act, or with a view to the preference of one creditor to another, except in payment of its circulating notes, shall be utterly null and void.

## On Malfeasance of Officers or Directors, franchises of Association forfeited.

Sec. 53. *And be it further enacted,* That if the directors of any Association shall knowingly violate, or knowingly permit any of the officers, agents or servants of the Association to violate any of the provisions of this Act, all the rights, privileges and franchises of the Association derived from this Act shall be thereby forfeited. Such violation shall, however, be determined and adjudged by a proper circuit, district or territorial court of the United States, in a suit brought for that purpose by the Comptroller of the Currency, in his own name, before the Association shall be declared dissolved. And in cases of such violation, every director who participated in or assented to the same shall be held liable in his personal and individual capacity for all damages which the Association, its shareholders or any other person shall have sustained in consequence of such violation.

## Appointment of Special Agent to examine affairs of Association—his powers.

Sec. 54. *And be it further enacted,* That the Comptroller of the Currency, with the approbation of the Secretary of the Treasury, as often as shall be deemed necessary or proper, shall appoint a suitable person or persons to make an examination of the affairs of every Banking Association, which person shall not be a director or other officer in any Association whose affairs he shall be appointed to examine, and who shall have power to make a thorough examination into all the affairs of the Association, and, in doing so, to examine any of the officers and agents thereof on oath; and shall make a full and detailed report of the condition of the Association to the Comptroller. And the Association

Digitized by Google

25

shall not be subject to any other visitorial powers than such as are authorized by this Act, except such as are vested in the several courts of law and chancery. And every person appointed to make such examination shall receive for his services at the rate of five dollars for each day by him employed in such examination, and two dollars for every twenty-five miles he shall necessarily travel in the performance of his duty, which shall be paid by the Association by him examined.

### Penalty for embezzlement or misdemeanor of Officers.

SEC. 55. *And be it further enacted,* That every president, director, cashier, teller, clerk, or agent of any Association, who shall embezzle, abstract, or willfully misapply any of the moneys, funds, or credits of the Association, or shall, without authority from the directors, issue or put in circulation any of the notes of the Association, or shall, without such authority, issue or put forth any certificate of deposit, draw any order or bill of exchange, make any acceptance, assign any note, bond, draft, bill of exchange, mortgage, judgment or decree, or shall make any false entry in any book, report, or statement of the Association, with intent, in either case, to injure or defraud the Association or any other company, body politic or corporate, or any individual person, or to deceive any officer of the Association, or any agent appointed to examine the affairs of any such Association, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by imprisonment not less than five nor more than ten years.

### Suits and proceedings under this Act.

SEC. 56. *And be it further enacted,* That all suits and proceedings arising out of the provisions of this Act, in which the United States or its officers or agents shall be parties, shall be conducted by the district attorneys of the several districts, under the direction and supervision of the Solicitor of the Treasury.

### Suits against any Association may be brought in any Court. Proceedings to enjoin Comptroller, to be brought in U. S. Court.

SEC. 57. *And be it further enacted,* That suits, actions and proceedings against any Association under this Act may be had in any circuit, district, or territorial court of the United States held within the district in which such Association may be established ; or in any State, county, or municipal court in the county or city in which said Association is located, having jurisdiction in similar cases : *Provided, however,* That all proceedings to enjoin the Comptroller under this Act shall be had in a circuit, district, or territorial court of the United States, held in the district in which the Association is located.

### Penalty for mutilation of circulating notes.

SEC. 58. *And be it further enacted,* That every person who shall

Digitized by Google

96

mutilate, cut, deface, disfigure, or perforate with holes, or shall unite or cement together, or do any other thing to any bank bill, draft, note, or other evidence of debt, issued by any such Association, or shall cause or procure the same to be done, with intent to render such bank bill, draft, note, or evidence of debt unfit to be reissued by said Association, shall, upon conviction, forfeit fifty dollars to the Association who shall be injured thereby, to be recovered by action in any court having jurisdiction.

### Penalty for forging circulating notes.

SEC. 59. *And be it further enacted,* That if any person shall falsely make, forge, or counterfeit, or cause or procure to be made, forged, or counterfeited, or willingly aid or assist in falsely making, forging, or counterfeiting, any note in imitation of, or purporting to be in imitation of, the circulating notes issued under the provisions of this Act, or shall pass, utter, or publish, or attempt to pass, utter, or publish, any false, forged, or counterfeited note, purporting to be issued by any Association doing a banking business under the provisions of this Act, knowing the same to be falsely made, forged, or counterfeited, or shall falsely alter, or cause or procure to be falsely altered, or willingly aid or assist in falsely altering, any such circulating notes, issued as aforesaid, or shall pass, utter or publish, or attempt to pass, utter or publish, any falsely altered or spurious circulating note issued, or purporting to have been issued, as aforesaid, knowing the same to be falsely altered or spurious, every such person shall be deemed and adjudged guilty of felony, and being thereof convicted by due course of law shall be sentenced to be imprisoned and kept at hard labor for a period of not less than five years nor more than fifteen years, and fined in a sum not exceeding one thousand dollars.

### Penalty for making plates for forging circulating notes, or having blank notes in possession.

SEC. 60. *And be it further enacted,* That if any person shall make or engrave, or cause or procure to be made or engraved, or shall have in his custody or possession any plate, die, or block after the similitude of any plate, die, or block from which any circulating notes issued as aforesaid shall have been prepared or printed, with intent to use such plate, die, or block, or cause or suffer the same to be used, in forging or counterfeiting any of the notes issued as aforesaid, or shall have in his custody or possession any blank note or notes engraved and printed after the similitude of any notes issued as aforesaid, with intent to use such blanks, or cause or suffer the same to be used, in forging or counterfeiting any of the notes issued as aforesaid, or shall have in his custody or possession any paper adapted to the making of such notes, and similar to the paper upon which any such notes shall have been issued, with intent to use such paper, or cause or suffer the same to be used, in forging or counterfeiting any of the notes issued as aforesaid, every such

Digitized by Google

27

person, being thereof convicted by due course of law, shall be sentenced to be imprisoned and kept to hard labor for a term not less than five or more than fifteen years, and fined in a sum not exceeding one thousand dollars.

*Annual report of Comptroller required; what it shall contain.*

SEC. 61. *And be it further enacted,* That it shall be the duty of the Comptroller of the Currency to report annually to Congress at the commencement of its session—

*First.* A summary of the state and condition of every Association from whom reports have been received the preceding year, at the several dates to which such reports refer, with an abstract of the whole amount of banking capital returned by them, of the whole amount of their debts and liabilities, the amount of circulating notes outstanding, and the total amount of means and resources, specifying the amount of lawful money held by them at the times of their several returns, and such other information in relation to said Associations as, in his judgment, may be useful.

*Second.* A statement of the Associations whose business has been closed during the year, with the amount of their circulation redeemed and the amount outstanding.

*Third.* Any amendment to the laws relative to banking by which the system may be improved, and the security of the holders of its notes and other creditors may be increased.

*Fourth.* The names and compensation of the clerks employed by him, and the whole amount of the expenses of the banking department during the year. And such report shall be made by or before the first day of December in each year, and the usual number of copies, for the use of the Senate and House, and one thousand copies for the use of the department, shall be printed by the public printer and in readiness for distribution at the first meeting of Congress.

*Act of 1863 repealed.*

SEC. 62. *And be it further enacted,* That the Act entitled "An Act to provide a national currency, secured by a pledge of United States stocks, and to provide for the circulation and redemption thereof," approved February twenty-fifth, eighteen hundred and sixty-three, is hereby repealed : *Provided,* That such repeal shall not affect any appointments made, acts done, or proceedings had, or the organization, acts, or proceedings of any Association organized or in the process of organization under the Act aforesaid : *And provided, also,* That all such Associations so organized or in process of organization shall enjoy all the rights and privileges granted, and be subject to all the duties, liabilities, and restrictions imposed by this Act, and with the approval of the Comptroller of the Currency, in lieu of the name specified in their respective organization certificates, may take any other name preferred by them and duly certified to the Comptroller, without prejudice to any right acquired under this Act, or under the Act hereby repealed ; but no such

Digitized by Google

28

change shall be made after six months from the passage of this Act : *Provided, also,* That the circulation issued or to be issued by such Association shall be considered as a part of the circulation provided for in this Act.

### *Executors, Trustees, &c., holding stock, not personally liable.*

Sec. 63. *And be it further enacted,* That persons holding stock, as executors, administrators, guardians, and trustees, shall not be personally subject to any liabilities as stockholders ; but the estates and funds in their hands shall be liable in like manner and to the same extent as the testator, intestate, ward, or person interested in said trust funds would be if they were respectively living and competent to act and hold the stock in their own name.

### *Rights of Congress reserved.*

Sec. 64. *And be it further enacted,* That Congress may at any time amend, alter or repeal this Act.

------◆◆◆◆------

*On the thirtieth day of June,* 1864, *Congress passed an act entitled* "*An Act to provide Internal Revenue to support the Government, to pay Interest on the Public Debt, and for other purposes*" (*Chap.* clxxiii. *U. S. Statutes at Large* (1863–1864), *page* 77), from which the following is an extract :

Sec. 110. *And be it further enacted,* That there shall be levied, collected and paid a duty of one twenty-fourth of one per centum each month upon the average amount of the deposits of money, subject to payment by check or draft, or represented by certificates of deposit or otherwise, whether payable on demand or at some future day, with any person, bank, association, company or corporation engaged in the business of banking; and a duty of one twenty-fourth of one per centum each month, as aforesaid, upon the average amount of the capital of any bank, association, company or corporation, or person engaged in the business of banking, beyond the amount invested in United States bonds; and a duty of one-twelfth of one per centum each month upon the average amount of circulation issued by any bank, association, corporation, company or person, including as circulation all certified checks and all notes and other obligations calculated or intended to circulate or to be used as money, but not including that in the vault of the bank, or redeemed and on deposit for said bank ; and an additional duty of one-sixth of one per centum each month upon the average amount of such circulation, issued as aforesaid, beyond the amount of ninety per centum of the capital of any such bank, association, corporation, company or person,

Digitized by Google

29

and upon any amount of such circulation beyond the average amount of the circulation that had been issued as aforesaid by any such bank, association, corporation, company or person, for the six months preceding the first day of July, eighteen hundred and sixty-four. And on the first Monday of August next, and of each month thereafter, a true and accurate return of the amount of circulation, of deposit, and of capital, as aforesaid, for the previous month, shall be made and rendered in duplicate by each of such banks, associations, corporations, companies or persons to the assessor of the district in which any such bank, association, corporation or company may be located, or in which such person may reside, with a declaration annexed thereto, and the oath or affirmation of such person, or of the president or cashier of such bank, association, corporation or company, in such form and manner as may be prescribed by the Commissioner of Internal Revenue, that the same contains a true and faithful statement of the amount of circulation, deposits and capital, as aforesaid, subject to duty as aforesaid, and shall transmit the duplicate of said return to the Commissioner of Internal Revenue, and within twenty days thereafter shall pay to the said Commissioner of Internal Revenue the duties hereinbefore prescribed upon the said amount of circulation, of deposits and of capital, as aforesaid ; and for any refusal or neglect to make or to render such return and payment, as aforesaid, any such bank, association, corporation, company or person so in default shall be subject to and pay a penalty of two hundred dollars, besides the additional penalty and forfeitures in other cases provided in this act ; and the amount of circulation, deposit and capital, as aforesaid, in default of the proper return, shall be estimated by the assessor or assistant assessor of the district, as aforesaid, upon the best information he can obtain ; and every such penalty, together with the duties as aforesaid, may be recovered for the use of the United States in any court of competent jurisdiction. And in the case of banks with branches the duty herein provided for shall be imposed upon the circulation of each branch, severally, and the amount of capital of each branch shall be considered to be the amount allotted to such branch ; and so much of an act entitled "An act to provide ways and means for the support of the government," approved March three, eighteen hundred and sixty-three, as imposes any tax on banks, their circulation, capital or deposits, other than is herein provided, is hereby repealed : *Provided*, That this section shall not apply to associations which are taxed under and by virtue of the act "to provide a national currency, secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof;" nor to any savings banks having no capital stock, and whose business is confined to receiving deposits, and loaning the same on interest for the benefit of the depositors only, and which do no other business of banking : *And provided, further*, That any bank ceasing to issue notes for circulation, and which shall deposit in the Treasury of the United States, in lawful money, the amount of its outstanding circulation, to be redeemed at par, under such regulations as the Secretary of the Treasury may prescribe, shall be exempt from any tax upon such circulation.

Digitized by Google

# INDEX

## to

## NATIONAL BANK ACT OF 1864.

### A.

| | SECTION. |
|---|---|
| Acknowledgment of certificate of application | 6 |
| Acts prejudicial to creditors in contemplation of insolvency | 53 |
| Administrators holding stock as such, rights of protected | 65 |
| Agents, Associations may become financial | 45 |
| Agents of Associations may make examination of bonds | 26 |
| special, and duties of | 47 |
| Albany, certain Associations to redeem at | 32 |
| Amendments to law, Comptroller to suggest | 61 |
| Congress reserves the right to make | 64 |
| Appointment of clerks in Bureau of Currency | 1 |
| Comptroller of Currency | 1 |
| Deputy Comptroller | 1 |
| director of Association, when to be made | 10 |
| receiver | 50 |
| visitor | 54 |
| Articles of Association, changes in, restricted | 12 |
| Assessors of United States taxes may inspect lists of stockholders | 40 |
| Assets of failing Associations, disbursement of | 50 |
| Assignments made by Comptroller, evidence, when | 2 |
| Assignment of rooms in treasury for use of bureau | 2 |
| Associations, acts of, prejudicial to creditors, void | 52 |
| amount of Capital stock of, to be certified | 6 |
| annual report of, by Comptroller | 61 |
| articles of, changes in, restricted | 12 |
| assets of, United States to have a prior lien on | 47 |
| at certain cities may keep one half of their lawful money reserve in New York | 31 |
| at certain cities must redeem at New York at par | 32 |
| authorised to circulate their notes | 23 |
| authorised to commence banking | 18 |
| banking, how to organize | 5 |
| banking powers conferred upon | 8 |
| banking usages granted to | 30 |
| bonds deposited by, forfeited, when | 47 |
| bonds of, may be sold at auction, when | 48 |
| bonds of, may be sold at private sale, when | 49 |
| bonds of, transferred to Treasurer, in trust | 19 |
| capital stock of, how and when paid in | 14 |
| capital stock of, how increased and reduced | 13 |

Digitized by Google

**SECTION.**

**Associations** capital stock of, into what shares divided........................ 12
certificate to be forwarded to Comptroller by.................... 6
condition of, upon organisation to be examined.................. 17
corporate powers conferred upon.............................. 8
declaration of intention to form.............................. 6
directors, amount of stock to be held by....................... 9
directors, election, number and qualification of................. 9
directors, oath of, and oath to be sent to the Comptroller......... 9
dissolved for irregularities, when............................ 53
dividends, how and when to be declared by..................... 33
duties of, upon suspension.................................. 46
existence of, limited to twenty years......................... 8
failing, duties of Comptroller towards....................... 47
failing to redeem their notes, proceeding against............... 46
forbidden to increase their liabilities, when................... 31
forbidden to issue any other than national currency notes........ 23
forbidden to make dividends, when........................... 31
forbidden to pay dividends, except upon profits................. 33
forbidden to pay out uncurrent money......................... 39
forbidden to pledge their own notes.......................... 37
forbidden to purchase any capital stock....................... 35
forbidden to purchase real estate, except...................... 28
forbidden to receive capital stock as security... ............... 35
forbidden to withdraw capital stock.......................... 38
indebtedness of, restricted.................................. 36
individual and firm liabilities to, restrained.................. 29
in liquidation to receive back their bonds..................... 43
interest on loans prescribed to............................... 30
interest on United States bonds to be paid to.................. 26
limitation of, as to holding real estate....................... 28
lists of stockholders prescribed........................... 6, 40
may become depositaries of public funds...................... 45
may be wound up for deficiency of redemption fund............. 31
may change their name..................................... 63
may enjoin proceedings against themselves.................... 50
may go into liquidation..................................... 42
may hold mortgages for five years........................... 28
may increase their capital................................... 12
may obtain their bonds from Treasurer........................ 25
may sell delinquent stock................................... 15
monthly and quarterly reports to be made by.................. 34
must forward certificate to Comptroller........ ............... 6
name of, must be certified.................................. 6
names and residences of stockholders of.................... 6, 40
notes of, for what to be received............................ 23
notes of, paid at United States treasury, when................ 47
notes of, penalties for counterfeiting, &c..................... 59
notes of, penalties for mutilating, &c........................ 58
notes of, signature of...................................... 22
officers of, appointment of.................................. 8
officers of, embezzlement by................................ 55
officers of, false entries by................................. 55
officers of, malfeasance of.................................. 53
officers of, misdemeanors of................................ 55
place of business of, must be certified........................ 6
place of business of, location of........................... 6, 8
president of, must be a director.............................. 9
rate of interest prescribed to................................ 30

Digitized by Google

## 32

|  | SECTIONS. |
|---|---|
| Associations, receiver of, appointment and duties of | 50 |
| reports of, Comptroller to prescribe | 34 |
| reports of, publication of | 34 |
| reports of, to be made monthly and quarterly under oath | 34 |
| reports to be made semi-annually to Treasurer | 41 |
| residence of shareholders to be certified by | 6 |
| rights of persons becoming shareholders of | 12 |
| security for loans to be given by shareholders of | 35 |
| shares of, personal property | 12 |
| shares of, transfer of | 12 |
| suits and actions by and against | 57 |
| taxes to be paid by | 41 |
| to be notified by Comptroller not to increase their liabilities | 45 |
| to deposit additional bonds, when | 26 |
| to examine bonds annually and give certificate | 25 |
| to forfeit corporate rights, when | 53 |
| to forward certificate and articles of association | 6 |
| to furnish monthly, and to make and publish quarterly reports | 34 |
| to pay compensation of visitor | 54 |
| to pay for protests and other expenses | 51 |
| to procure certificate from Comptroller, and publish the same | 18 |
| to receive interest on bonds | 26 |
| to receive new notes for old | 24 |
| to receive notes for circulation from Comptroller | 21 |
| to redeem at certain cities at par | 32 |
| to reserve a redemption fund | 31 |
| transfer of bonds of, to Treasurer of the United States | 16 |
| transfer of bonds of, by Treasurer of the United States | 19 |
| usury by | 30 |
| vested with corporate powers | 8 |
| Attorneys, district, duties of | 56 |
| Auction, public, when stock may be sold at | 15, 48 |
| Authority, grant of, to commence banking | 18 |


### B.

| Bad debts defined | 38 |
|---|---|
| Baltimore, certain Associations to redeem at | 32 |
| Banking Associations, how formed | 5 |
| powers conferred on Associations | 8 |
| usages secured to Associations | 30 |
| Banks, State and other, may organise under this Act | 44 |
| Bills of exchange, discount of, not loans | 29 |
| Bond of Comptroller and Deputy Comptroller of Currency | 1 |
| Bonds of United States defined | 4 |
| deposited by Associations, change of coupon for registered | 16 |
| change of one kind for any other kind | 26 |
| deposited by Associations to be annually examined | 25 |
| depreciation of | 26 |
| how and when returned | 16, 26 |
| how transferred to Treasurer in trust | 19 |
| in excess of amount required may be taken up | 16 |
| interest on, paid, when | 26 |
| may be declared forfeited | 47 |
| may be sold at auction | 15, 48 |
| may be sold at private sale | 49 |
| must be transferred in trust | 19 |

Digitized by Google

33

|  | SECTION |
|---|---|
| Bonds deposited by Associations, Secretary may authorize the exchange of..... | 16 |
| who may sign memorandum of transfer of.... | 19 |
| Bonds of Associations in liquidation to be returned.......................... | 42 |
| transferred by Associations, receipt must be given for................. | 19 |
| Boston, certain Associations may redeem at................................. | 32 |
| Bureau of Currency established and business prescribed..................... | 1 |
| Burning of mutilated notes prescribed................................... | 8 |
| redeemed notes prescribed........................... | 43 |
| Business of Association, place of.......................................... | 6, 8 |

## C.

| Capital stock, Associations forbidden to withdraw their................ ........ | 38 |
|---|---|
| of Associations falling below the minimum amount must be made up.... | 15 |
| Capital stock of Associations, how and when paid in........................ | 14 |
| how increased.................... | 13 |
| how reduced.......................13, 36 | |
| not to be pledged as security................... | 35 |
| shares of, prescribed........................ | 12 |
| semi-annual reports of, to Treasurer............ | 41 |
| tax on portion of........................ | 41 |
| of State banks, when converted into National.......·......... | 44 |
| Cashier of Association, appointment of.......................... | 8 |
| to keep list of names of stockholders................ | 40 |
| to sign notes.................................. | 23 |
| Certificate of burnt notes to be given....................24, 43 | |
| Comptroller to National banks converted from State............ | 44 |
| examination of bonds deposited.................... | 25 |
| increase of capital paid in required................... | 13 |
| organization, Comptroller to give.................... | 18 |
| organization, preliminary, by Associations................ | 6 |
| organization, preliminary, by State banks.............. | 44 |
| organization, publication of......................·...... | 18 |
| Certificates, certified copies of, by Comptroller, evidence............... | 6 |
| clearing-house................................... | 31 |
| executed by Comptroller, evidence, when................. | 2 |
| Charleston, Associations may hereafter redeem at........................ | 32 |
| Chicago, Associations may redeem at............................... | 32 |
| Cincinnati, Associations may redeem at............................... | 32 |
| Circulating notes lost, how replaced.................................. | 24 |
| semi-annual report of, to Treasurer..................... | 41 |
| tax on............................ | 41 |
| Circulation of notes by Associations authorized.................... | 23 |
| Clearing-house certificates..................................... | 31 |
| Cleveland, Associations may redeem at.............................. | 32 |
| Clerks in Currency Bureau, appointment and classification of................. | 1 |
| to be annually returned........................ | 61 |
| Commercial centers, at which certain Associations must redeem............... | 31 |
| Commission, special, may be appointed, when....................... | 18 |
| Comptroller of Currency, annual report of....................... | 61 |
| appointment of............................ | 1 |
| assignments made by, evidence................. | 2 |
| bond of............................. | 1 |
| certificates made by, evidence.............. | 2 |
| certificates of capital paid in, to give........................ | 13 |
| conveyances executed by, evidence..................... | 2 |
| copies of papers certified by, evidence................. | 2 |

3

Digitized by Google

84

**SECTION.**

Comptroller, duties of, towards failing Associations........................... 47
    duties of, upon report of receiver.............................. 50
    forbidden to be interested in Associations............. ......... 1
    list of stockholders, &c., to be transmitted to.................... 40
    may appoint receiver, when................................ 50
    may authorize Associations to receive interest on their bonds..... 26
    may declare bonds forfeited.............................. 47
    may direct return of bonds to Associations................... 26
    may examine affairs of associates by commission............... 18
    may sell bonds at auction.............................. 48
    may sell bonds at private sale............................ 49
    monthly and quarterly reports to be made to.................. 34
    oath of.............................................. 1
    oath of directors to be sent to.......................... 9
    office and term of office prescribed........................ 1
    offices in treasury to be assigned to...................... 3
    proceedings by, against failing Associations.................. 47
    receiver to be appointed by, and to report to................ 50
    removal of, from office.................................. 1
    salary of............................................. 1
    seal of bureau to be devised by.......................... 3
    to advise Associations of transfers....................... 19
    to advise Associations of sales of bonds at auction........... 48
    of Currency to cause plates for notes to be engraved.......... 22
    to control plates for notes.............................. 41
    to demand the deposit of additional bonds, when.............. 26
    to deposit plates, &c., in fire-proof vaults.................. 3
    to determine the amount to which Associations may increase their
      capital........................................... 13
    to devise a seal....................................... 3
    to direct publication of certificate, when.................. 18
    to examine affairs of Associations, when................... 17
    to furnish furniture, stationery, &c...................... 3
    to furnish notes for Associations to issue.................. 22
    to give Associations a certificate........................ 18
    to give certificate of increase of capital.................. 13
    to give notice of payment of notes at treasury.............. 47
    to have access to books of Treasurer...................... 20
    to keep record of bonds transferred...................... 19
    to notify Associations not to increase their liabilities....... 46
    to notify Associations of deficiency of redemption fund........ 34
    to prescribe the form of quarterly reports................. 34
    to receive and exchange worn-out notes.................... 24
    to record transfers of bonds from Associations.............. 20
    to record and preserve certificate of association........... 6
    to supply notes to Associations upon transfer of bonds....... 21
    verified lists of names, &c., of shareholders to be sent to..... 40
    visitor to be appointed by.............................. 54
    of Currency, Deputy. (See Deputy Comptroller.)
Condition of Associations to be examined by Comptroller.................... 17
Congress, rights of, to amend this Act, reserved........................... 64
Conversion of State banks into National................................ 44
Conveyances made by Comptroller, evidence............................. 3
Copies of papers certified to by Comptroller, evidence..................... 3
    annual report of Comptroller, number of.................... 61
Corporate powers conferred upon Associations........................... 8
Counterfeiting, &c., notes of Associations, punishment for.................. 59
Courts, jurisdiction of................................................ 57

Digitized by Google

35

SECTION.

Creditors, acts by Associations prejudicial to, void........................... 52
  of failing Associations to be notified............................... 50
Currency act, repeal of former.................................... 12
Currency Bureau, appointment and classification of clerks in, and business of... 1
  clerks in, return of, to be annually made................... 61

### D.

Day of election, who may determine......................................... 10
Debts, bad, defined........................................ 38
Delinquent shareholders, proceedings against.............................. 16
Denominations of notes to be circulated................................ 22
Depositories of public moneys, Associations may become,................... 45
  to receive notes of National Banks at par...... 45
Deposits, semi-annual report to Treasurer, average of..................... 41
  tax on.................................... 41
Deputy Comptroller of Currency, appointment, bond, duties, and oath of........ 1
  forbidden to be interested in Associations under this Act............................... 1
Deputy Comptroller of Currency, salary of............................... 1
Detroit, Associations may redeem at par at.............................. 32
Devices on notes, Secretary of Treasury to regulate........................ 22
Directors of Association, appointment of.................................. 10
  consent of, for transfer of stock, when required....... 8
  election of...................................... 10
  knowingly permitting the violation of any laws....... 53
  malfeasance of.............................. 53
  number, oath, and qualification of.................... 9
  president must be one............................ 9
  to be examined under oath, when.................. 17
  to control delinquent stock, when................. 16
Discounting bills of exchange not loaning money.......................... 29
Discount or purchase of bills of exchange not usury........................ 30
District attorneys, duties of, under this law.............................. 56
Dividends forbidden, when,...................................31,38
Dividends restricted to net profits................................. 38
  semi-annual, how to be made, and surplus fund to be set aside from.. 33

### E.

Election of directors......................................... 10
  rights of shareholders at.............................. 11
Embezzlement, false entries, &c., by officers............................ 55
Engraving of counterfeit plates, punishment for.......................... 60
Evidence, certain instruments of writing executed by Comptroller........... 2
  certified copies of certificates made by Comptroller.............. 6
Examination of affairs of Association by visitor........................ 54
  affairs of Associations by special commission................. 18
  officers under oath..........................17,54
  bonds deposited by Associations to be annually made........ 25
Examination preliminary, and other expenses, how paid.................... 51
Exchange of bonds deposited, how effected......................16,26
Executors holding stock, rights of, protected............................ 63
Expenses of executing this Act, how paid............................. 41
  visitorial examination, what, and how paid................ 54

Digitized by Google

36

## F.

| | SECTION. |
|---|---|
| False entries by officers, and punishment for | 55 |
| Fees for examinations, protests, and receivers, how paid | 51 |
| Financial agents, Associations may become | 45 |
| Firms, liabilities of, to Associations, restrained | 29 |
| Forfeiture of corporate rights of Association for malfeasance | 53 |
| Forgery, &c., of notes | 59 |
| Frauds, &c., by officers | 55 |
| Fuel, furniture, &c., of bureau, Comptroller to furnish | 3 |
| Fund for redemption of issue to be reserved | 31 |

## G.

| | |
|---|---|
| Guardians holding stock as such, rights of, protected | 63 |

## H.

| | |
|---|---|
| Hypothecation of notes by Association forbidden | 37 |

## I.

| | |
|---|---|
| Impression of seal of bureau to be filed in office of Secretary of State | 2 |
| when valid | 2 |
| Increase of capital stock, Comptroller to determine | 13 |
| liabilities by Associations forbidden, when | 31 |
| Indebtedness by Associations limited | 36 |
| Individual liabilities to Associations restricted | 29 |
| Injunction against Comptroller may be had, when | 50 |
| Insolvency, acts prejudicial to creditors in contemplation of | 52 |
| Installments on capital stock, how paid | 14 |
| Interest on bonds deposited, Associations to receive | 26 |
| to be retained by Comptroller, when | 26 |
| on loans may be retained in advance | 30 |
| rate of, established, and penalty for usurious | 30 |
| Interested in Associations under this Act, Comptroller and Deputy Comptroller forbidden to be | 1 |

## J.

| | |
|---|---|
| Jurisdiction of courts | 57 |

## L.

| | |
|---|---|
| Leavenworth, certain Associations may redeem at par at | 32 |
| Liabilities, Associations forbidden to increase their, when | 31 |
| of individuals and firms to Associations restricted | 29 |
| of shareholders to creditors declared | 12 |
| Liability of shareholders in banks of $5,000,000 and upwards | 12 |
| Lien of United States upon assets of Association | 47 |
| Lights, &c., for use of bureau, Comptroller to furnish | 3 |
| Limitation of amount of notes and of small notes to be circulated | 22 |
| Associations in the holding of real estate | 28 |
| existence of Associations | 8 |
| indebtedness of Associations | 36 |
| Liquidation of Associations, how effected | 42 |
| Lists of names and residences, &c., of stockholders, to be transmitted to Comptroller, with application | 6, 40 |
| Lists of names, residences, &c., verified, to be annually sent to the Comptroller | 40 |
| to be retained in office | 40 |
| Lists of stockholders to be open to the inspection of the United States assessors | 40 |
| Loans, security to be given for prescribed | 35 |
| Lost, circulating notes, how replaced | 24 |

Digitized by Google

37

## M.

SECTION.

Malfeasance by directors, or permitted by them........................... 53
Memorandum of transfer upon bonds, who may sign....................... 19
Milwaukee, Associations may redeem at, at par.......................... 32
Misdemeanor of officers, and punishment for............................ 27
Money, uncurrent or under par, Associations forbidden to pay ............... 39
Monthly reports, Associations to furnish................................ 34
Mortgage, how long Associations may hold a.............................. 28
Mutilated notes, burning of, prescribed................................. 24
Mutilation of notes of Association, penalty for.......................... 58

## N.

Name of Association may be changed..................................... 62
Name of Association to be set forth in certificate........................ 6
Names of stockholders, residences and amount of stock held, to be kept by offi-
cers, and verified list transmitted to Comptroller of Currency.............. 40
New Orleans, Associations may redeem at par at.......................... 32
New York, certain Associations must redeem at par at..................... 32
Notary public, protest of notes by..................................... 46
    fees of, for protest, how paid................................ 51
Notes of Associations, amount of, to be supplied to each Association.......... 21
    annual report of issue of, to be made.................... 61
    burning of, and certificate of burning mutilated.......... 24
    Comptroller to supply, for circulation .................. 21
    denominations of, and devices upon, prescribed.......... 22
    disfigurement and mutilation of........................ 58
    expenses of preparing, how paid....................... 41
    for what to be received.............................. 23
    fund for the redemption of, to be maintained............ 31
    going into liquidation, paid by Treasurer, when......... 42
    paid at the treasury of the United States, when......... 47
    paid at the treasury of United States, how disposed of... 47
    penalty for the forgery, &c., of....................... 59
    plates of, Comptroller to control...................... 41
    pledge of, by Associations forbidden................... 37
    protest of........................................... 46
    received at par by financial agents.................... 45
    to be received by other Associations................... 32
    to be supplied by Comptroller for circulation.......... 21
    redeemed, burning of, prescribed...................... 43
    tax on circulating .................................. 41
    what shall be expressed upon the face of............... 22
    what officers of Association must sign.................. 22
    whole amount of, to be issued......................... 22
    worn and mutilated, to be exchanged for new............ 24
    worn and mutilated, when exchanged, how canceled....... 24
Notification to Comptroller of the amount of stock paid in required.......... 14
Number of copies of annual report of Comptroller........................ 61
    persons requisite to organize a Banking Association.............. 5

## O.

Oath of office of Comptroller of Currency, and when it must be taken......... 1
    Deputy Comptroller, and when it must be taken............. 1
    directors of Association to be transmitted to Comptroller..... 9
Officers of Association, how appointed................................. 8
    malfeasance of, how punished....................... 53

Digitized by Google

## 38

SECTION.

Officers of Association, misdemeanors of, defined..........................27, 55
Offices in Treasury building to be assigned for Currency Bureau............... 3
Organization, certificate of State banks converting into national.............. 44
    specifications of................................................. 6

### P.

Paper similar to Association bank-note paper, penalties for being in possession of 60
Payment by Associations of uncurrent money forbidden..................... 39
Penalties against banks for failing to furnish quarterly report............... 34
    failing to report notes issued ........................ 41
    neglecting to maintain redemption fund............... 31
    neglecting to report average circulation, &c........ 41
    neglecting to select a bank of redemption............ 32
    neglecting to sell stock received as security........ 35
    usury................................................ 30
  for disfigurement, mutilation, &c., of notes ........................ 58
  for being found with bank-note paper...... ...................... 60
  for counterfeiting, uttering, &c................................... 59
  for engraving plates or having them in possession, &c.............. 60
Perjury, false reports made under oath to be deemed........................ 34
Philadelphia, Associations may redeem at par at........................... 32
Pittsburg, Associations may redeem at par at.............................. 32
Place of business of Association determined............................... 8
Plates, fraudulent engraving of........................................... 60
Plates to be kept in fire vaults.......................................... 3
Pledge of their own notes by Associations forbidden........................ 37
President of Association, how appointed................................... 8
  Association must be a director.................................... 9
  United States to appoint and remove Comptroller of Currency.... 1
Proceedings against failing Association.................................... 46
Profits, surplus fund to be set aside from................................. 33
Protest of notes of Associations.......................................... 46
  fees for, how paid............................................... 51
Proxy, shareholders may vote by.......................................... 11
Public moneys may be deposited in banks of Association................... 45
Publication of authority to commence banking............................. 18
Purchase or discount of bills of exchange not usury....................... 30

### Q.

Qualifications of directors............................................... 9
Quarterly reports of Associations, Comptroller to prescribe................ 34
  penalty for neglecting to furnish............ 34
  publication of........................... 34

### R.

Rate of Interest on loans, &c., established................................. 30
Real estate, limitation of Associations to hold............ ................. 28
Recall of bonds deposited in excess of the requirements of the Act.......... 16
Receiver of Association, appointment and duties of......................... 50
  appointed on failure to maintain lawful money reserve. 31
  appointed on failure to maintain capital stock at prescribed amount............................... 15
  appointed on failure to sell stock received as security.. 35
  may be enjoined................................... 50
  payment of fees of................................ 51
Redemptions at par, where to be made..................................... 32

Digitized by Google

39

| | SECTION. |
|---|---|
| Reduction of capital stock, how effected.......................................... | 13 |
| right of, reserved............................................. | 36 |
| Register of United States, signature of, required on notes....................... | 22 |
| Removal of Comptroller of Currency................................................. | 1 |
| Report, annual, of Comptroller to Congress........................................ | 61 |
| monthly, Associations to make.......................................... | 34 |
| quarterly, Associations to make and publish............................ | 34 |
| quarterly, Comptroller to prescribe form of............................ | 34 |
| quarterly, Comptroller to publish abstracts of......................... | 34 |
| Reports to be made to Treasurer of average circulation, deposits, semi-annually. | 41 |
| Reserve of lawful money to be maintained.......................................... | 31 |
| Residences of shareholders to be returned under oath.............................. | 40 |
| Richmond, redemptions at par may hereafter be made at............................. | 32 |
| Rights of administrators, executors, guardians, and trustees, holding stock as such.......................................................................... | 63 |
| Associations reserved, on repeal of former Act......................... | 62 |
| Congress to amend Act reserved......................................... | 64 |
| privileges, and franchises of Associations forfeited, when.............. | 58 |

### S.

| | |
|---|---|
| Salary of Comptroller and Deputy Comptroller of Currency...................... | 1 |
| San Francisco, Associations may redeem at par at... ....................... | 32 |
| Seal of Bureau of Currency and impression of, when valid...................... | 2 |
| description and impression of, to be filed in the Department of State........................................ | 2 |
| of Treasury to appear on all notes................................... | 22 |
| Secretary of Treasury, clerks of bureau appointed by......................... | 1 |
| Comptroller of Currency nominated by.............. | 1 |
| Comptroller of Currency under general direction of.... | 1 |
| disposition of notes paid at Treasury regulated by..... | 47 |
| engraving of plates directed by....................... | 22 |
| exchange of old notes for new, regulated by............ | 24 |
| offices for bureau to be assigned by.................. | 3 |
| seal of bureau to be approved by................. ... | 2 |
| Secretary of State, certificate of approval of seal and impression of same to be filed in the office of......................................................... | 2 |
| Security for loans, capital stock forbidden to be received as.................. | 35 |
| Semi-annual dividend, how declared............................................. | 33 |
| Senate to confirm appointment of Comptroller................................... | 1 |
| Shareholder, delinquent, proceedings against................................... | 15 |
| Shareholders, liabilities of, in banks of $5,000,000 and upwards............... | 12 |
| liabilities of, to creditors........................... | 12 |
| may determine day of election, when................... | 10 |
| may determine to close Association, when............... | 42 |
| rights of, upon receiving transfers of stock........... | 12 |
| securities for loans required from..................... | 35 |
| vote of, by proxy, and when not entitled to vote....... | 11 |
| Shares of stock personal property............................................. | 12 |
| transfer of........................................... | 8 |
| Signatures of Officers of Association to appear on notes....................... | 22 |
| Treasurer and Register upon........................ | 22 |
| Small notes, limitation of amount to be issued................................ | 22 |
| Solicitor of Treasury to supervise suits under this law....................... | 56 |
| Spurious notes, penalty for having, uttering, &c.............................. | 59 |
| State banks, conversion of, into national, and capital of, when converted...... | 44 |
| State taxation of national Associations....................................... | 41 |
| Stationery of bureau, Comptroller to furnish................................. | 3 |

Digitized by Google



Digitized by Google

Digitized by Google